**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 07-4112**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

BARBARA BLAND,

Defendant - Appellant.

Appeal from the United States District Court for the Northern
District of West Virginia, at Clarksburg.  Irene M. Keeley, Chief
District Judge.  (1:06-cr-00064-IMK)

Argued:  January 29, 2008          Decided:  March 7, 2008

Before MOTZ, TRAXLER, and DUNCAN, Circuit Judges.

Affirmed by unpublished per curiam opinion.

**ARGUED:** Charles T. Berry, BOWLES, RICE, MCDAVID, GRAFF & LOVE,
P.L.L.C., Morgantown, West Virginia, for Appellant.  David Earl
Godwin, Assistant United States Attorney, OFFICE OF THE UNITED
STATES ATTORNEY, Clarksburg, West Virginia, for Appellee.  **ON
BRIEF:** Sharon L. Potter, United States Attorney, Wheeling, West
Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Barbara Bland ("Bland") pleaded guilty to one count of attempted federal financial aid fraud in violation of 20 U.S.C. § 1097(a). She was subsequently convicted and sentenced to two years' probation, with the first six months to be served in home detention. On appeal, Bland contends that the district court erred by sentencing her as a felon, rather than as a misdemeanant. Because we find that Bland pleaded guilty to a felony offense under § 1097(a) and that her guilty plea is supported by a sufficient factual basis, we find no error and affirm.

I.

In 2001, Bland opened the Art and Science Institute of Cosmetology and Massage Therapy ("ASIC") in Fairmont, West Virginia. In September 2004, she applied to the United States Department of Education ("DOE") for ASIC to become certified to participate in the federal financial aid programs under Title IV of the Higher Education Act of 1965 ("Title IV"). Pub. L. No. 89-329, 79 Stat. 1219 (codified as amended at 20 U.S.C. §§ 1070 et. seq.). As a Title IV eligible institution, qualified ASIC students would have been allowed to seek federal financial aid to help fund their tuition. See 20 U.S.C. § 1070. Bland commenced the certification process by submitting an "Initial Application for Approval to be Designated as an Eligible Institution and to Participate in the Federal Financial Assistance Programs" pursuant to the Title IV

2

regulations.  See 34 C.F.R. § 600.20(a).  Next, Bland was required to obtain and submit an audited financial statement for ASIC for fiscal year 2003, prepared in accordance with "Government Auditing Standards."  See id. § 668.23.  She hired Michael Henderson, CPA ("Henderson") of the accounting firm Oliver & Henderson, who prepared a compilation report[1] of ASIC's financial standing, rather than a more costly audited financial statement.  Bland subsequently used the information entered in the compilation report to create a false audited financial statement, forged Henderson's signature, and submitted the statement to the DOE on a fabricated Oliver & Henderson letterhead.  The fraudulent submissions were detected by the DOE.  During the course of the ensuing DOE investigation, a DOE employee contacted Bland and informed her that ASIC's Title IV application would not be considered for approval until Bland submitted an additional audited financial statement for fiscal year 2004.  Bland never submitted the statement and the application was never approved.  As a result, neither ASIC nor any of its students received funds from the DOE.

Bland was later indicted in the United States District Court for the Northern District of West Virginia on five counts stemming from her submission of the fraudulent application.  Bland entered

---

[1]A compilation report is a collection of financial statements created solely from the representations of management, with no audit or independent review of the reported figures. A compilation report does not conform to Government Auditing Standards.

3

into a plea agreement in which she agreed to plead guilty to one count of federal financial aid fraud, in violation of 20 U.S.C. § 1097(a), in exchange for the dismissal of the other four counts. The agreement indicated that the maximum statutory penalties to which Bland would be exposed were: "(1) imprisonment for a period of not more than 5 years;" "(2) a fine of up to $250,000;" "(3) up to three (3) years of supervised release;" and, "(4) a special assessment of $100.00." J.A. 11-12. The government agreed to recommend as "lenient a sentence as an application of the advisory sentencing guidelines will allow." J.A. 13. Bland, in turn, waived "any right she may have [had] for a jury determination of any and all facts relevant to sentencing," and consented to the determination of such facts by the sentencing court. Id.

At Bland's plea hearing, the district court first sought to determine whether Bland was aware of the contents of the plea agreement and the ramifications of a guilty plea. As part of this determination, the court asked Bland if she understood that the statutory "maximum period of imprisonment" for the crime to which she was pleading guilty was "five years." Plea Hr'g Tr. at 19. Bland responded, "Yes ma'am." Id. Bland responded in the same manner when asked whether she understood that "there[] [was] a one hundred dollar mandatory special assessment that has to be paid for the felony conviction on or before the date of your sentencing." Id. at 20.

4

The court next sought to determine whether there existed a sufficient factual basis to support Bland's guilty plea. To so establish, the government called as a witness George Blissman ("Blissman"), a Special Agent employed with the DOE Office of Inspector General. Blissman testified that after interviewing Bland's accountant, Henderson, he discovered that the 2003 financial statements submitted by Bland "weren't prepared by the CPA who was represented as preparing them. . . . They were not signed by him and the letterhead used on the reports were not ones that he would use." Id. at 31. Blissman further testified that Bland admitted to him that she had prepared the financial statements with the assistance of a member of her staff, and that they had forged Henderson's signature. Following Blissman's testimony, Bland entered her plea of guilty, at which time the following dialogue took place.

> THE COURT: Did you in fact do what Mr. Blissman testified regarding the preparation of the application for financial aid and the further preparation of the financial statements that were questioned later by the Department of Education?
>
> THE DEFENDANT: Yes ma'am.
>
> . . . .
>
> THE COURT: Okay. You took information that Mr. Henderson had done as a compilation, which is a term of art under accounting, and then you managed to put it into a format that was required by the Department of Education and then signed his name to it, correct?
>
> THE DEFENDANT: Yes.

5

> THE COURT: All right. So in point of fact then, you took someone else's compilation of financial information, put it in a different format and represented that it had been done by Mr. Henderson on behalf of you and your school, correct?
>
> THE DEFENDANT: Yes.

Id. at 35-37. The court then made the following findings in regard to Bland:

> I find that you are aware of the consequences of the plea and that there is a factual basis for the tendered plea and that's based both on the testimony of Mr. Blissman and your allocution to the . . . elements of the offense. I find that . . . because there is a factual basis for the plea and that you knew what you were doing here, that your plea of guilty to Count One should be accepted and I, therefore, accept your plea of guilty to Count One.

Id. at 38.

Immediately following the acceptance of Bland's plea, the court asked the government if Bland would "have any licensure issues [with respect to the operation of ASIC] now that she's tendered a plea of guilty to a felony." Id. at 39. The government responded, "I don't really know what effect--I'm not aware of anything." Id. at 40. The court then addressed the question to Bland's attorney who answered, "Well, certainly there could be some fallout from a guilty plea" but it is "not automatic." Id. There was no further discussion on the issue and the hearing concluded.

The Presentence Investigation Report ("PSR") was prepared on November 9, 2006. It listed Bland's offense as a "Class D Felony" with a corresponding penalty of "5 years/$250,000." J.A. 117. The PSR indicated that under the United States Sentencing Guidelines

6

(the "Guidelines"), the base offense level for a violation of § 1097(a) was 6.  The PSR suggested that the offense level be increased by 6 levels in this case based upon the estimated $48,710 to $69,520 intended loss range of Bland's fraud.[2]  The PSR also recommended that Bland be given a 2-level reduction pursuant to U.S.S.G. section 3E1.1(a) for Acceptance of Responsibility.  Though Bland filed four written objections to the PSR, she made no objection to the PSR's classification of the offense as a Class D Felony, the listed maximum statutory penalties, or the estimated intended loss range.

In her sentencing memorandum filed December 1, 2006, Bland asserted for the first time that because her attempted fraud was unsuccessful and procured no funds, she should be sentenced under the "misdemeanor exception" of § 1097(a).  As will be discussed more fully below, the "misdemeanor exception" limits the punishment for certain violations of § 1097(a) to a fine of no more than $5000 and a term of imprisonment not to exceed one year.  At the sentencing hearing on January 3, 2007, the district court rejected Bland's argument, finding that the government's contention that

---

[2]The Guidelines require calculation of the loss at issue in each specific case, which is the greater of the intended loss and the actual loss.  U.S.S.G. § 2B1.1. Cmt. n. 3(A).  Section 2B1.1(b)(1) sets out the offense-level increases corresponding to various ranges of loss amounts.  The estimated intended loss figures in this case were predicated upon Title IV eligibility percentages and grant and loan amounts from similar institutions in the state of West Virginia and schools with similar student populations in the Fairmont area.

7

unsuccessful attempts at procuring funds illegally are not covered by the exception "ma[de] the most sense." J.A. 79. The court further found that "under 20 U.S.C. Section 1097(a), this is not a misdemeanor offense. This is a felony offense. Moreover, I find as a fact that that is exactly what Ms. Bland knew when she pled guilty to the offense back in September of 2006." J.A. 79-80. Therefore the court concluded that it "w[ould] not sentence her as a misdemeanant," but "w[ould] sentence her pursuant to the felony provisions of the statute." J.A. 80. Then, based on the intended loss range in the PSR, Bland was sentenced, as a felon, to two years' probation with the first six months in home detention--the bottom of the Guideline range. Bland filed a timely notice of appeal.

## II.

On appeal, Bland challenges neither her conviction under § 1097(a), nor the factual basis supporting the conviction, nor "the actual term of her sentence." Appellant's Br. at 7. Instead, she assigns error solely to the district court's decision to sentence her as a felon rather than as a misdemeanant.

Section 1097(a) provides:

> Any person who knowingly and willfully embezzles, misapplies, steals, obtains by fraud, false statement, or forgery, or fails to refund any funds, assets, or property provided or insured under this subchapter and part C of subchapter I of chapter 34 of Title 42 or attempts to so embezzle, misapply, steal, obtain by

8

fraud, false statement or forgery, or fail to refund any funds, assets, or property, shall be fined not more than $20,000 or imprisoned for not more than 5 years, or both, <u>except if the amount so embezzled, misapplied, stolen, obtained by fraud, false statement, or forgery, or failed to be refunded does not exceed $200, then the fine shall not be more than $5,000 and imprisonment shall not exceed one year, or both.</u>

20 U.S.C. § 1097(a) (emphasis added). Because the final clause of § 1097, emphasized above, limits the imprisonment term to one year for any crime falling within its parameters, it has been characterized as the "misdemeanor exception." <u>See</u> 18 U.S.C. § 3559(a) (classifying any crime for which the maximum term of imprisonment exceeds one year as a felony, and any crime for which the maximum term authorized is limited to one year or less as a misdemeanor.).

Bland argues that the plain language of the statute requires that she be sentenced under this exception "because [her] unperfected fraud procured zero dollars." Appellant's Br. at 8. That is, because "the amount" she "obtained by fraud . . . d[id] not exceed $200," she was guilty only of a misdemeanor violation of § 1097(a). The government, however, contends that the same language unambiguously renders the misdemeanor exception inapplicable to Bland's attempted crime, because "[b]y its terms, it only applies when a person, <u>who actually receives funds</u>, receives less than $200." Appellee's Br. at 8. Both Bland and the government's "plain language" interpretations lead to somewhat

9

anomalous results. Under Bland's theory, every attempted fraud, no matter the intended loss amount, could only be punished as a misdemeanor. Conversely, under the government's interpretation, every unsuccessful attempt would be considered a felony and could be punished with a maximum five-year prison term, even when a successful attempt involving the same or lesser amount of money, so long as less than $200, would be considered a misdemeanor with a maximum sentence of one year imprisonment.

Although the applicability of the misdemeanor exception to an attempted crime under § 1097(a) appears to be an issue of first impression for this court, as well as for the other circuit courts of appeal, we need not resolve the issue here, because we find, consonant with the district court, that Bland pleaded guilty to a felony and that there exists a sufficient factual basis to support her plea. Notwithstanding Bland's post hoc contention that she "did not specifically agree to a felony plea," Appellant's Br. at 2, the record plainly indicates that she did in fact plead guilty to a felony and was aware of such both when she signed the plea agreement and when she entered her plea in the district court.

As the district court pointed out during Bland's sentencing hearing, "[i]t's very clear from the provisions of the plea agreement" that the parties contemplated a felony plea. J.A. 74. First, the plea agreement provides that "[t]he maximum statutory penalties to which Ms. Bland will be exposed by virtue of her plea

10

of guilty" are five-years' imprisonment; "a fine of up to $250,000"; "up to three (3) years of supervised release"; and "a special assessment of $100.00." J.A. 11-12. Bland acknowledges, as she must, that these are the maximum penalties for a <u>felony</u> charge under § 1097(a). If Bland were agreeing to plead guilty to a misdemeanor, "the maximum statutory penalties to which [she] w[ould] [have] be[en] exposed," J.A. 11, were one year in prison and a fine of up to five thousand dollars. <u>See</u> § 1097(a). Further, if Bland had been pleading to a misdemeanor, she would have only owed, and presumably only paid, a maximum special assessment fee of twenty-five dollars. <u>Id.</u> Instead, she was assessed, and paid on the date of her sentencing hearing, a fee of one hundred dollars, which is charged only to individuals convicted of a <u>felony offense</u>. <u>See</u> 18 U.S.C. § 3013(a) (providing that any individual convicted of an offense against the United States be charged an amount from "$5 to $25" "in the case of an infraction or a misdemeanor" and "$100 in the case of a felony").

The PSR also alerted Bland to the fact that she had pleaded guilty to a felony by, again, listing the felony penalties as those to which she would be subject, and by describing Bland's offense as a "<u>Class D Felony</u>." J.A. 117. Notably, although Bland made four objections to the PSR, she did not dispute the statutory maximums or the classification of her offense as a felony. <u>See</u> J.A. 142-46.

11

The plea colloquy further demonstrates that Bland intended to and understood that she was pleading guilty to a felony offense. In fact, when this issue was raised at Bland's sentencing hearing, the court stated to Bland's counsel, "I will be candid with you . . . I was quite surprised to see that, particularly since I handled the plea hearing[,] that you and Ms. Bland thought she was pleading to a misdemeanor." J.A. 68. The court's bewilderment is understandable. At the plea hearing, after having the government summarize the terms of the plea agreement, including those discussed above that plainly indicate that the parties negotiated a felony plea, the court explained in detail each maximum penalty for a <u>felony</u> violation of § 1097(a) and asked Bland whether she understood that she would be exposed to such penalties. At no time during this extended colloquy did Bland's counsel interject or object; nor did Bland express any consternation or confusion. Rather, she simply indicated her understanding, responding, "Yes, ma'am." Plea Hr'g Tr. 19-20. Significantly, during this conversation the court specifically mentioned the word "felony," asking Bland whether she understood that there was "a one hundred dollar mandatory special assessment that has to be paid for the <u>felony</u> conviction." <u>Id.</u> at 20 (emphasis added). Again, Bland responded, "Yes ma'am." <u>Id.</u> The classification of Bland's offense was also a key part of a later exchange between the court and Bland's counsel, when, after accepting Bland's plea, the court

12

asked whether Bland would "have any licensure issues now that she's tendered a plea of guilty to a <u>felony</u>." <u>Id.</u> at 39 (emphasis added). Again, there was no expression of shock, hesitation, or mention of a misdemeanor charge. Instead, Bland's counsel simply answered the question and the hearing concluded without further discussion.

These exchanges, combined with the contents of the plea agreement, led the district court to find that Bland had pleaded guilty to a felony offense and to further "find as a fact" that she knew "exactly" that at the time she entered the plea. We find no error in these findings.[3]

III.

Having determined that Bland pleaded guilty to a felony charge under § 1097(a), the only remaining issue is whether her plea was supported by a sufficient factual basis.[4] Under Rule 11(b)(3), "[b]efore entering judgment on a guilty plea, the court must determine that there is a factual basis for the plea." Fed. R.

---

[3]Because we conclude that Bland pleaded guilty to a felony and therefore need not reach the statutory interpretation issue, we likewise have no need to resolve her subsidiary arguments regarding the proper calculation of the intended loss of her unperfected fraud and the application of the rule of lenity.

[4]Although Bland does not explicitly challenge the district court's finding of a sufficient factual basis for the plea, we proceed prudentially and construe her argument as including such a challenge.

Crim. P. 11(b)(3). The district court in this case made such a finding, which we review for abuse of discretion. United States v. Martinez, 277 F.3d 517, 531 (4th Cir. 2002). We cannot find error "so long as the district court could reasonably have determined that there was a sufficient factual basis based on the record before it." United States v. Mastrapa, 509 F.3d 652, 660 (4th Cir. 2007).

Bland was charged with, and pleaded guilty to, knowingly and willfully attempting to obtain federal funds by fraud, false statement, and forgery. J.A. 6; see § 1097(a). Blissman, the DOE investigator, testified that through examination of the fraudulent documents, Bland's own admission, and talking with Bland's accountant, he learned that Bland created a fraudulent audited financial statement, copied it on a fabricated letterhead, forged the accountant's signature, and submitted the statement to the DOE in an attempt to procure Title IV funds for her institution and its students. Bland fully corroborated this testimony. If successful, the district court found, Bland's fraud and forgery would have swindled the government out of approximately $50,000. With this record before it, the district court did not abuse its discretion in finding a sufficient factual basis for Bland's guilty plea.

IV.

Because Bland pleaded guilty to a felony offense under 20 U.S.C. § 1097(a), and there existed a sufficient factual basis to support that plea, the judgment of the district court is

AFFIRMED.