**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 17-4117**

UNITED STATES OF AMERICA,

Plaintiff − Appellee,

v.

ALEX LENARD MCCOY,

Defendant – Appellant.

Appeal from the United States District Court for the Western District of North Carolina, at Charlotte. Frank D. Whitney, Chief District Judge. (3:15-cr-00273-FDW-DCK-3)

Argued: March 22, 2018                          Decided: July 13, 2018

Before NIEMEYER, WYNN, and DIAZ, Circuit Judges.

Dismissed in part and affirmed by published opinion. Judge Diaz wrote the opinion, in which Judge Niemeyer and Judge Wynn joined.

**ARGUED:** James W. Kilbourne, Jr., DUNGAN, KILBOURNE & STAHL, PA, Asheville, North Carolina, for Appellant. Anthony Joseph Enright, OFFICE OF THE UNITED STATES ATTORNEY, Charlotte, North Carolina, for Appellee. **ON BRIEF:** R. Andrew Murray, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Charlotte, North Carolina, for Appellee.

DIAZ, Circuit Judge:

Alex Lenard McCoy pleaded guilty, pursuant to a plea agreement, to a federal drug trafficking conspiracy. In the agreement, McCoy waived his right to appeal his conviction and "whatever sentence is imposed," except on the basis of ineffective assistance of counsel and prosecutorial misconduct. Despite this waiver, McCoy now appeals, arguing that (1) a factual basis doesn't support his guilty plea, and (2) that the district court erred in its application of the Sentencing Guidelines to his case.

The government has moved to dismiss the appeal based on the waiver. McCoy responds that a challenge to the factual basis of a plea falls outside the scope of a valid waiver. We agree, but find that a factual basis supports his plea. And because McCoy's waiver is otherwise knowing and voluntary, it forecloses his remaining claims on appeal. We therefore grant the Government's motion to dismiss the appeal in part and affirm McCoy's conviction and sentence.


I.

In November 2015, a federal grand jury indicted Alex McCoy on four related drug charges. Count one charged McCoy with participating in a crack-cocaine trafficking conspiracy centered around Gaston County, North Carolina in violation of 21 U.S.C. §§ 841(a)(1) and 846, while the remaining three counts charged McCoy with distribution and possession of crack cocaine in violation of 21 U.S.C. § 841(a)(1).

McCoy eventually agreed to plead guilty to count one in exchange for the government dismissing the three other charges and withdrawing information about a prior

2

felony drug conviction. The plea agreement included a joint recommendation regarding the quantity of crack cocaine or "cocaine base" involved in the conspiracy along with an appellate waiver. Specifically, McCoy agreed to waive "all such rights to contest the conviction except for: (1) claims of ineffective assistance of counsel or (2) prosecutorial misconduct" or "otherwise to appeal whatever sentence is imposed with the two exceptions set forth above." J.A. 87.

The parties further stipulated to a factual basis signed by McCoy's lawyer and adopted by McCoy during his Rule 11 plea colloquy. This factual basis stated that "McCoy was a member of a conspiracy with others, in Gaston County . . . to distribute and to possess with intent to distribute cocaine base, commonly known as 'crack cocaine.'" J.A. 38. The document also provided that "[t]he amount of cocaine base ('crack cocaine') that was known to or reasonably foreseeable by the Defendant was at least eight hundred and forty (840) grams but less than two thousand eight hundred (2,800) grams." J.A. 40.

McCoy's Rule 11 hearing was held before a magistrate judge on June 1, 2016. That morning, the government realized the plea agreement referred to cocaine, rather than cocaine base, when discussing the quantity of drugs involved in the conspiracy. After discussing the error with defense counsel, the government proposed "a pen and ink change to page 2 of the plea agreement" by adding the word base after cocaine to clarify that "what we're talking about is cocaine base" not "powder cocaine." J.A. 48. Defense counsel voiced no objection to the change and the court permitted the revision. The government and McCoy's lawyer initialed next to the change. McCoy did not.

The government then proceeded to summarize (incorrectly) the terms of the plea agreement, stating the minimum quantity of cocaine base (or crack cocaine) involved in the conspiracy was "at least 240 grams" when the minimum amount set forth in the plea agreement was in fact 840 grams. J.A. 49. After the government's summary, the magistrate judge engaged in the following colloquy with McCoy regarding the plea agreement, including the appellate waiver:

> THE COURT: . . . Do you understand those to be the terms of your plea agreement, and do you agree with those terms?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Has the right to appeal your conviction and sentence been expressly waived in this plea agreement?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Has the right to challenge your conviction and sentence in a post-conviction proceeding also been waived in the plea agreement?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Is that your signature on the plea agreement?
>
> THE DEFENDANT: Yes, sir.

J.A. 50–51. McCoy also told the court that he had read, understood, and agreed with both the plea agreement and the factual basis.

The magistrate judge found the guilty plea to be knowing and voluntary and recommended the district court accept it. The magistrate judge then advised McCoy orally and in writing that he had fourteen days to object to his recommendation and that any untimely objection would be waived. McCoy also signed a written acknowledgment that

4

he was in fact guilty of count one and that while the government had summarized the terms of the plea agreement in court he understood "that the written, filed Plea Agreement is the best statement of those terms, and therefore 'speaks for itself.'" J.A. 57. McCoy did not file any objections to the magistrate judge's findings or the Rule 11 proceeding.

A probation officer then prepared a presentence report ("PSR"). Relying on the terms of the plea agreement and stipulated facts, the PSR concluded that McCoy was responsible for between 840 and 2,800 grams of crack cocaine. The PSR also found that McCoy maintained a premises for the purposes of manufacturing or distributing drugs, was an organizer or leader of a criminal enterprise involving five or more people, and possessed a firearm in connection with his drug dealing. McCoy filed repeated objections to these last three findings, but didn't object to or dispute the quantity of crack cocaine listed in the PSR. McCoy also wrote several letters complaining about his lawyer, which led to him receiving new counsel.

Following the appointment of new counsel, the district court granted a continuance so that McCoy's second attorney could review the evidence and explore whether or not to withdraw the guilty plea. However, McCoy didn't move to withdraw his guilty plea and his case proceeded to sentencing.

At the sentencing hearing, the district court confirmed that McCoy had read and understood the PSR and had been able to discuss any concerns with counsel. McCoy stated that counsel had answered his questions and that he had no remaining concerns. The court then turned to McCoy's plea colloquy and asked him if he remembered the various details of that proceeding. McCoy responded affirmatively, stated that he had answered all

5

questions truthfully, would provide the same answers if asked again, and that he was in fact guilty of the charged conspiracy to distribute crack cocaine. McCoy's new counsel, who was not at the plea colloquy, also stated his belief that McCoy had understood the questions asked by the magistrate judge.

The court concluded that McCoy's guilty plea was knowing and voluntary and that McCoy fully understood the charge, potential penalties, and consequences of his plea. The district court also independently found there was a factual basis for the entry of the plea based on the stipulated factual basis and other information in the record. The court accepted McCoy's plea and adjudged him guilty.

Proceeding to the sentencing phase, the district court found that evidence supported McCoy's leadership and firearm enhancement. The court also determined that the applicable guidelines range was 292 to 365 months in prison, sentencing McCoy to 292 months' imprisonment.

McCoy filed this direct appeal shortly after sentencing and the government moved to dismiss based on the appellate waiver. McCoy responds that a challenge to a plea's factual basis falls outside the scope of the waiver. We deferred ruling on the motion pending a review of the merits of the case.

## II.

Before considering the scope of McCoy's appellate waiver, we must determine whether he knowingly and voluntarily waived his right to appeal. *United States v. Copeland*, 707 F.3d 522, 528 (4th Cir. 2013). We review the validity of

6

an appellate waiver de novo. *Id.* In making this assessment, we consider "the totality of the circumstances," including the experience and conduct of the defendant, his educational background, and his knowledge of the plea agreement and its terms. *United States v. Thornsbury*, 670 F.3d 532, 537 (4th Cir. 2012). Generally though, "if a district court questions a defendant regarding the waiver of appellate rights during the Rule 11 colloquy and the record indicates that the defendant understood the full significance of the waiver, the waiver is valid." *Id.*

McCoy doesn't claim that he failed to understand the appellate waiver or that the magistrate judge conducted an improper colloquy. Instead, McCoy argues that the government's blunders during the colloquy rendered the plea, and resulting waiver, invalid by creating confusion over the quantity and type of drugs involved in the conspiracy.

We fail to see how the government's missteps created genuine uncertainty about the type or quantity of drugs admitted to in the plea agreement. McCoy was in the courtroom when the government alerted the court to the error in the agreement, and neither he nor his attorney objected to the proposed pen-and-ink addition of the word "base" after "cocaine." And though McCoy didn't initial next to the change (his attorney did), he told the magistrate judge he understood and agreed with the plea agreement after the addition was made.

Nor was the government's misstatement about the quantity of cocaine base fatal, either on its own or in combination with the above error. This is especially true here where there are no other instances of ambiguity, the plain terms of the agreement expressly state the quantity of drugs involved in the conspiracy, and McCoy never complained of the

7

misstatement prior to this appeal. McCoy was also told by the court during his colloquy that despite the government's summary of the plea agreement, the document speaks for itself and represents the bargain between the parties.

Even if some confusion existed, McCoy hasn't established prejudice by showing that absent the government's errors, he wouldn't have pleaded guilty. *See United States v. Martinez*, 277 F.3d 517, 532 (4th Cir. 2002) (holding we review waived Rule 11 objections for plain error). If anything, the record supports the opposite inference: that the government's mistakes had no effect on McCoy's decision. The indictment clearly referenced a crack-cocaine conspiracy and the factual basis also stated that McCoy participated in a crack-cocaine trafficking conspiracy involving at least 840 grams of cocaine base. The PSR relied on both documents to conclude McCoy was responsible for between 840 to 2,800 grams of crack cocaine, which McCoy never objected to despite challenging other conclusions in the PSR. Finally, when asked by the district court if he remembered his plea colloquy, still wished to plead guilty, and was in fact guilty of a conspiracy to distribute crack cocaine or "cocaine base," McCoy said yes.

In sum, there's no reason to think that McCoy mistakenly believed or intended to plead guilty to anything other than a crack-cocaine conspiracy involving the precise drug quantities laid out in the factual basis and plea agreement. We therefore hold that McCoy knowingly and intelligently waived his right to appeal.

8

III.

Next, we must decide whether McCoy's appeal falls within the scope of his valid waiver. Our case law is divided on whether a challenge to a plea's factual basis survives an appellate waiver. The government urges us to answer in the negative and argues, in the alternative, that a factual basis supports the plea here.

A defendant who waives his right to appeal a plea "retains the right to obtain appellate review of his sentence on certain limited grounds." *United States v. Attar*, 38 F.3d 727, 732 (4th Cir. 1994). For example, a waiver will not foreclose a defendant's claim that his sentence is in excess of the statutorily authorized maximum, *United States v. Marin*, 961 F.2d 493, 496 (4th Cir. 1992), or that the underlying conviction was obtained in violation of his Sixth Amendment right to counsel, *Attar*, 38 F.3d at 732–33. The rationale for these exceptions is that they present claims that if true, would render the plea itself unknowing or involuntarily. *See United States v. Brown*, 232 F.3d 399, 403–04 (4th Cir. 2000) (discussing case law).

We have previously considered whether a defendant's appellate waiver extends to Rule 11's factual basis requirement. In two cases, we acknowledged that the question is unsettled, though we disposed of the appeal on the merits, holding that a factual basis supported the guilty plea. *See United States v. Contador-Cruz*, 714 F. App'x 215, 217 (4th Cir. 2017); *United States v. Baker*, 571 F. App'x 258, 259 (4th Cir. 2014). In two other cases, we held, without explanation, that a valid waiver precluded review of the plea's factual basis. *See United States v. Carter*, 267 F. App'x. 203, 203 (4th Cir. 2008); *United States v. Molina*, 286 F. App'x 94, 96 (4th Cir. 2008). And in one decision, we

9

held that a waiver didn't prevent appellate review of a plea's factual basis but found the appeal meritless. *See United States v. Bell*, 359 F. App'x 442, 444 (4th Cir. 2010).

Like McCoy, the defendant in *Bell* argued that since "his appeal goes to the propriety of the guilty plea itself, his appeal is not barred by waiver." *Id.* We agreed, noting that regardless of whether his contentions had merit, they "would not be barred by Bell's appeal waiver." *Id.* Indeed, the very purpose of requiring a district court to "satisfy itself that there is a factual basis for the plea before entering judgment" is to ensure "the plea is made voluntarily with understanding of the nature of the charge." Fed. R. Crim. P. 11, Advisory Comm. Notes (1966). By arguing that his plea lacks a factual basis, a defendant raises the possibility that his decision to plead guilty is the product of coercion or misunderstanding. *United States v. Mastrapa*, 509 F.3d 652, 659–60 (4th Cir. 2007). In other words, that the plea is not the result of a knowing and voluntary decision.

This logic is reflected in the decisions of the Second, Fifth, and Eleventh Circuits, which have all held that a challenge to a plea's factual basis survives an appellate waiver. *See, e.g.*, *United States v. Puentes-Hurtado*, 794 F.3d 1278, 1285 (11th Cir. 2015) ("Such a claim goes to the heart of whether the guilty plea, including the waiver of appeal, is enforceable."); *United States v. Hildenbrand*, 527 F.3d 466, 474 (5th Cir. 2008) ("If the factual basis is not sufficient as to any count, the conviction should be vacated."); *United States v. Adams*, 448 F.3d 492, 497 502 (2d Cir. 2006) ("A lack of a factual basis for a plea is a substantial defect calling into question the validity of the plea."). Thus, like *Bell*, these decisions view a challenge to a plea's factual basis as an attack on the voluntariness of the waiver itself. *See* 359 F. App'x at 444.

10

We agree and hold that even valid appeal waivers do not bar claims that a factual basis is insufficient to support a guilty plea. Nothing about this rule will undermine the finality of the plea-bargaining process or spur time-consuming appeals. In most instances, a valid plea agreement will be accompanied by a sworn factual basis, which will preclude defendants from simply denying their guilt. *See Blackledge v. Allison*, 431 U.S. 63, 73–74 (1977). At the same time, a defendant's "claim that there is an insufficient factual basis to support a guilty plea . . . goes to the heart of whether the guilty plea, including the waiver of appeal, is enforceable." *Puentes-Hurtado*, 794 F.3d at 1285 (citations omitted).

We therefore turn to McCoy's contention that his plea lacks a factual basis.

IV.

McCoy argues that the district court failed to develop a sufficient factual basis to link him to a conspiracy involving one of the alleged co-conspirators, Rodney Travis Moore. The district court should therefore not have accepted his guilty plea because "knowledge of the conspiracy and its members [] was an essential element to his guilt." Because McCoy didn't seek to withdraw his guilty plea in the district court, we review his challenge for plain error. *Mastrapa*, 509 F.3d at 657.

McCoy's position is rooted in a misunderstanding of conspiracy law. A defendant need not know every member of a conspiracy or act at every stage in order to be liable for the conspiracy as a whole. *United States v. Johnson*, 54 F.3d 1150, 1154 (4th Cir. 1995); *United States v. Leavis*, 853 F.2d 215, 218 (4th Cir. 1988). The fact that McCoy claims he

11

doesn't know Rodney Moore doesn't preclude the two men from having participated in the same conspiracy.

More importantly, a sufficient factual basis exists here because McCoy stipulated he "was a member of a conspiracy with others, in Gaston County . . . to distribute and to possess with intent to distribute cocaine base, commonly known as 'crack cocaine.'" J.A. 38. "A stipulated recitation of facts alone is sufficient to support a plea." *United States v. Ketchum*, 550 F.3d 363, 367 (4th Cir. 2008). McCoy affirmed the accuracy of this factual basis and his guilt to the charged crime before the magistrate judge during his Rule 11 proceeding and again before the district court prior to sentencing. Thus while parts of McCoy's appeal survives his waiver, he is still bound by his sworn statements. *See Bell*, 359 F. App'x at 444 ("In the absence of clear and convincing evidence to the contrary, a defendant is bound by statements made under oath during his plea colloquy.").

McCoy doesn't claim that this factual basis is incorrect. Rather, he says its lack of detail renders it insufficient. However, a bare recitation of the facts will satisfy Rule 11 so long as it establishes the elements of the offense. *United States v. DeFusco*, 949 F.2d 114, 120 (4th Cir. 1991); *accord United States v. Blankenship*, 374 F. App'x 384, 385–86 (4th Cir. 2010) ("[S]tipulated factual basis signed by Blankenship, which established the elements of the offense of conviction . . . was sufficient, in itself, to establish a factual basis

12

for his plea.").  We therefore find no error (plain or otherwise) in the district court's conclusion that a factual basis supported McCoy's guilty plea.[*]


V.

For the foregoing reasons, we grant the government's motion to dismiss in part and affirm the district court's judgment.

*DISMISSED IN PART AND AFFIRMED*

---

[*] McCoy also challenges the district court's application of the Sentencing Guidelines.  However, because McCoy validly waived "all rights conferred by 18 U.S.C. § 3742 or otherwise to appeal whatever sentence is imposed" with the exception of ineffective assistance of counsel or prosecutorial misconduct, we do not consider these issues on appeal. *United States v. Tate*, 845 F.3d 571, 573, 578 (4th Cir. 2017).