**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 16-4441

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

JESMENE LOCKHART, a/k/a Jesmene Laquin-Montre Lockhart, a/k/a Jasmene Lockhart,

Defendant - Appellant.

Appeal from the United States District Court for the Western District of North Carolina, at Charlotte.  Robert J. Conrad, Jr., District Judge.  (3:15-cr-00034-RJC-1)

Argued:  November 15, 2018                    Decided:  February 27, 2019

Before GREGORY, Chief Judge, and KEENAN and FLOYD, Circuit Judges.

Affirmed by published opinion.  Judge Keenan wrote the opinion stating the judgment of the Court.  Chief Judge Gregory wrote a separate opinion, concurring in the judgment. Judge Floyd wrote a separate opinion, concurring in the judgment.

**ARGUED:**  Joshua B. Carpenter, FEDERAL DEFENDERS OF WESTERN NORTH CAROLINA, INC., Asheville, North Carolina, for Appellant.  Amy Elizabeth Ray, OFFICE OF THE UNITED STATES ATTORNEY, Asheville, North Carolina, for Appellee.  **ON BRIEF:**  Anthony Martinez, Federal Public Defender, FEDERAL DEFENDERS OF WESTERN NORTH CAROLINA, INC., Charlotte, North Carolina, for Appellant.  R. Andrew Murray, United States Attorney, OFFICE OF THE UNITED

STATES ATTORNEY, Charlotte, North Carolina, for Appellee.

BARBARA MILANO KEENAN, Circuit Judge:

Jesmene Lockhart appeals his conviction for possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1), and his mandatory minimum 15-year sentence of imprisonment imposed under the Armed Career Criminal Act, 18 U.S.C. § 924(e) (ACCA). Lockhart contends that the magistrate judge plainly erred by failing to advise him during the Rule 11 plea colloquy of his potential exposure to the 15-year mandatory minimum. Lockhart asserts that if he had been properly informed of his sentencing exposure, there is a "reasonable probability" that he would not have pleaded guilty.

Our holding today is restricted by this Court's decision in *United States v. Massenburg*, 564 F.3d 337 (4th Cir. 2009), which imposes an extreme burden on a defendant seeking plain error review of a court's failure to provide correct sentencing information before accepting a guilty plea. Under *Massenburg*, irrespective of the extent of the court's error, a defendant on plain error review affirmatively must show a reasonable probability that he would not have pleaded guilty if he had been correctly advised of his sentencing exposure. *See id*. at 343-46. The defendant is held to this standard even though the Rule 11 error committed by the district court left him in the dark regarding one of the most critical considerations in the guilty plea calculus, namely, his sentencing exposure. But because we are bound by the holding in *Massenburg*, we conclude that Lockhart has failed to satisfy his evidentiary burden and we affirm the district court's judgment.

3

I.

In September 2014, officers with the Charlotte-Mecklenburg Police Department in North Carolina responded to a report of suspicious activity involving individuals in a parked car. When they arrived at the scene, an officer saw Lockhart sitting in the driver's seat of the vehicle. The officer observed Lockhart use his right hand to provide his identification, "while reaching down by his left leg with his left hand, where the officer saw the butt of [a] gun with a magazine clip." The officers recovered the loaded handgun and an additional magazine from the driver's side of the car, and the authorities later determined that the firearm was stolen.

Lockhart pleaded guilty without a written plea agreement to a single count of possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). During the Rule 11 plea colloquy, the magistrate judge asked the government to "summarize the charge and the penalty." The government responded that the "maximum penalty" Lockhart faced was 10 years' imprisonment. At no time during the plea colloquy did the court or the government clarify that Lockhart's criminal history could result in a 15-year mandatory minimum sentence under the ACCA.

The probation officer prepared a presentence report (PSR), and recommended sentencing Lockhart as an armed career criminal under the ACCA based on three prior convictions for North Carolina robbery with a dangerous weapon. In the PSR, the probation officer explicitly highlighted the error in the plea colloquy, noting that Lockhart "was informed that his statutory penalties . . . were not more than ten years[']

4

imprisonment," but that "based on [Lockhart's] three prior convictions for violent felonies, [his] statutory penalties . . . are not less than fifteen years['] imprisonment."

Lockhart's counsel objected to the proposed ACCA designation on the grounds that (1) his North Carolina convictions, which were consolidated for judgment, should count as a single ACCA predicate, and (2) an ACCA sentence would violate the Eighth Amendment. Notably, Lockhart did not assert that he previously had been unaware of his potential ACCA designation, nor did he seek to withdraw his guilty plea.

After overruling the objections of Lockhart's counsel, the district court concluded that Lockhart qualified as an armed career criminal under the ACCA and imposed the mandatory minimum term of 15 years' imprisonment. Following the court's imposition of sentence, Lockhart's counsel conferred with the government and informed the court:

> I'm going back to his plea colloquy. He didn't plead to 924(e) [ACCA] it was not on the Bill of Indictment. But I went over it beforehand. So I just want to put it on the record that he was fully aware of that. I just thought about it.

The government added, "We just wanted to make a record of that." The district court did not ask counsel to elaborate on the issue, and did not confirm with Lockhart whether he was aware of his potential ACCA exposure before pleading guilty. Lockhart now appeals, represented by new appellate counsel.

## II.

Because Lockhart did not seek to withdraw his guilty plea in the district court, we review his challenge to his plea for plain error. *United States v. McCoy*, 895 F.3d 358,

5

364 (4th Cir. 2018). To succeed under plain error review, a defendant bears the burden to show that: (1) an error occurred; (2) the error was plain; and (3) the error affected his substantial rights. *United States v. Olano*, 507 U.S. 725, 732 (1993). This Court retains the discretion to correct such an error but will do so "only if the error seriously affects the fairness, integrity or public reputation of judicial proceedings." *Massenburg*, 564 F.3d at 343 (quoting *Olano*, 507 U.S. at 732) (internal quotation marks omitted).

Lockhart argues that if he had known he would be facing a 15-year minimum sentence under the ACCA, rather than the 10-year maximum stated at the plea hearing, he likely would not have pleaded guilty. Lockhart asserts that the benefit he gained from pleading guilty was "so small as to be virtually non-existent" and, thus, that he would have had a strong incentive to request a trial to try to avoid the 15-year ACCA sentence.[1]

In response, the government concedes that the magistrate judge committed plain error in failing to advise Lockhart of his correct sentencing exposure. Nevertheless, the government contends that Lockhart has failed to show a "reasonable probability" that he would not have pleaded guilty if the court had advised him of his correct sentencing range. *See United States v. Dominguez Benitez*, 542 U.S. 74, 76 (2004). Applying *Massenburg*, we agree with the government.

---

[1] In support of this argument, Lockhart maintains that: (1) the three-level reduction in his Guidelines calculation for acceptance of responsibility reduced the bottom of his Guidelines range by only eight months; (2) mitigating factors in his background, including his youth at the time of the predicate offenses, would have supported a downward variance irrespective whether he pleaded guilty; and (3) if he had not pleaded guilty to the felon in possession charge, the government might have offered him a more favorable plea deal for possession of a stolen firearm, in violation of 18 U.S.C. § 922(j), which charge would not have triggered the ACCA enhancement.

6

Initially, we agree with the parties that the first two prongs of plain error review are satisfied here. Under Federal Rule of Criminal Procedure 11, a district court must advise a defendant of "any maximum possible penalty" as well as "any mandatory minimum penalty" before accepting a guilty plea. Fed. R. Crim. P. 11(b)(1)(H), (I). And even if a district court is not certain whether a defendant will qualify for an enhanced sentence under the ACCA, the court nevertheless must "anticipate the possibility and explain to [the defendant] the sentence that would be applicable if he had prior qualifying convictions." *United States v. Hairston*, 522 F.3d 336, 340 (4th Cir. 2008); *see also Massenburg*, 564 F.3d at 343 (plain error when defendant not advised of potential ACCA sentence before pleading guilty). As the Supreme Court has explained:

> If the judge told the defendant that the maximum possible sentence was 10 years and then imposed a sentence of 15 years based on ACCA, the defendant would have been sorely misled and would have a ground for moving to withdraw the plea.

*United States v. Rodriquez*, 553 U.S. 377, 384 (2008). Accordingly, we conclude that by failing to inform Lockhart of his potential eligibility for a mandatory minimum 15-year sentence under the ACCA, the magistrate judge committed error that was plain.

To establish that a Rule 11 error affected his substantial rights, a defendant bears the burden to show "a reasonable probability that, but for the error, he would not have entered the plea." *Dominguez Benitez*, 542 U.S. at 83. This standard is a demanding one, requiring a defendant to "satisfy the judgment of the reviewing court, informed by the entire record, that the probability of a different result is 'sufficient to undermine confidence in the outcome' of the proceeding." *Id.* (citations omitted).

7

In *Massenburg*, 564 F.3d 337, we directly addressed this "reasonable probability" standard in the context of incorrect sentencing information provided at a Rule 11 plea colloquy. There, in circumstances nearly identical to the case now before us, a district court failed to inform the defendant during his plea colloquy that he might receive an enhanced ACCA sentence, contrary to later information in the PSR that the defendant's record qualified him to receive such a sentence. *Id.* at 340. We declined to impose a presumption of prejudice for that error, despite the significant increase in sentencing exposure caused by the ACCA designation. *Id.* at 341, 344-46. In adopting this approach, we emphasized that the confines of plain error review reflect the importance of timely raising objections in the district court. *Id.* at 345-46.

In considering whether Massenburg had shown an effect on his substantial rights for purposes of plain error review, we reviewed the record in accordance with Supreme Court precedent and emphasized three main considerations: (1) whether there were any "statements on the record . . . suggesting that [the defendant] would not have pleaded guilty if the district court had properly informed him of the sentencing exposure that he faced"; (2) whether the defendant moved to withdraw his guilty plea after learning from the PSR that he could be sentenced under the ACCA; and (3) the strength of the government's case against him. *Id.* at 343-44. Applying those factors, we observed that there was an "absence of any evidence in the record suggesting that [Massenburg] would not have entered his plea in the absence of the error," and that the government's evidence was strong. *Id.* at 344. We therefore concluded that Massenburg had not satisfied the "reasonable probability" standard. *Id.* at 339, 343-46.

To obtain relief on plain error review, a defendant who has been given materially incorrect sentencing information at his plea colloquy must show that there is a reasonable probability he would not have pleaded guilty if he had been correctly advised. *Id.* at 343 (citing *Dominguez Benitez*, 542 U.S. at 83). Under *Massenburg*, this showing must appear affirmatively on the record, notwithstanding that the essence of plain error review is the defendant's failure to object to such error in the trial court. *See id.* at 343-44; Fed. R. Crim. P. 52(b) ("A plain error that affects substantial rights may be considered *even though it was not brought to the court's attention.*" (emphasis added)); *see generally Olano*, 507 U.S. at 733-34. Thus, a defendant who has been misled by the court's misinformation regarding his sentencing exposure effectively is penalized on plain error review by the very nature of the court's plain error.

As a matter of simple logic, the problem created by such an error, namely, the entry of a guilty plea that is not knowing and voluntary, cannot be cured by contrary information later provided in a PSR. *United States v. Goins*, 51 F.3d 400, 404 (4th Cir. 1995). A defendant has a right to rely on the accuracy of the information provided by the court on which his plea is based. A plea that is predicated on a defendant's ignorance of his sentencing exposure strikes at the very heart of our criminal justice system. And, while plain error review reflects the defendant's failure to preserve his objection to the trial court's error, *Massenburg* strongly suggests that to succeed on plain error review, the defendant must have stated on the record in the trial court that the error affected his plea decision, and that he must have moved to withdraw his plea after learning of his actual sentencing exposure.

9

Under *Dominguez Benitez*, a defendant is not required to make such an affirmative statement on the trial record or to move to withdraw his plea after learning of his true sentencing exposure. Instead, under the Supreme Court's holding, a defendant who has been advised incorrectly by the court at his Rule 11 hearing can demonstrate an effect on his substantial rights by showing based on the totality of the circumstances in the record, that there is a reasonable likelihood he would have gone to trial if the court had advised him correctly. *See* 542 U.S. at 83 (holding that a defendant must "satisfy the judgment of the reviewing court, informed by the entire record, that the probability of a different result is 'sufficient to undermine confidence in the outcome' of the proceeding" (citations omitted)). But this Court in *Massenburg* has required more.[2]

Under *Massenburg*, we are constrained to conclude that Lockhart has not shown that his substantial rights were affected by the district court's error. As in *Massenburg*, Lockhart did not make any statement on the record indicating that he would have proceeded to trial if he had been given the correct sentencing information. *See* 564 F.3d at 343-44. Nor did Lockhart express surprise at the statement in the PSR of a potential

---

[2] Absent the holding in *Massenburg*, we would further consider whether the magnitude of the present error created a reasonable probability of a different result by impairing Lockhart's ability to evaluate the relative risks and benefits of pleading guilty versus proceeding to trial. *See United States v. Rivera-Maldonado*, 560 F.3d 16, 17, 20-21 (1st Cir. 2009) (vacating guilty plea on plain error review when court informed the defendant that he faced a three-year maximum term of supervised release, when he actually faced a maximum term of life, because "the erroneous information dramatically altered the sentencing stakes for the defendant"); *United States v. Monie*, 858 F.3d 1029, 1032-34 (6th Cir. 2017) (citing *Rivera-Maldonado*, 560 F.3d at 21) (vacating guilty plea on plain error review when defendant was not informed of ACCA exposure).

ACCA designation or seek to withdraw his plea on that basis. And the government proffered strong evidence supporting the felon in possession charge, based on recovery of a firearm and ammunition from the driver's side of a vehicle while Lockhart was sitting in the driver's seat. Accordingly, bound by the holding of *Massenburg*, we conclude that Lockhart has failed to demonstrate plain error affecting his substantial rights.

## III.

We affirm the district court's judgment.

*AFFIRMED*

11

GREGORY, Chief Judge, concurring in the judgment:

According to the record evidence, Jesmene Lockhart entered into a guilty plea without the district court properly informing him of his true sentencing exposure. In contract cases involving a property interest, this Court would likely grant a party in Lockhart's position rescission based on unilateral mistake. Unfortunately, this is a criminal case, and the liberty interests of defendants such as Lockhart are not afforded the same level of relief. The majority operates under the mistaken belief that the scales of justice are constrained by *United States v. Massenburg*, 564 F.3d 337 (4th Cir. 2009) and the circular logic it employs. Consequently, despite the majority's trepidation about the injustice *Massenburg* represents, it still acquiesces to an analysis that reflexively prohibits defendants from obtaining a second chance to make an informed choice after being misinformed by the district court.

*Massenburg* relies on the Supreme Court's holding in *United States v. Dominguez Benitez*, 542 U.S. 74 (2004). There, the Supreme Court held "that a defendant who seeks reversal of his conviction after a guilty plea, on the ground that the district court committed plain error under Rule 11, must show a reasonable probability that, but for the error, he would not have entered the plea. A defendant must thus satisfy the judgment of the reviewing court, informed by the entire record, that the probability of a different result is sufficient to undermine confidence in the outcome of the proceeding." 542 U.S. at 83 (internal quotation marks and citations omitted).

Applying *Dominguez Benitez*, this Court in *Massenburg* conducted a plain error review of the entire record, examining (1) whether there were any "statements on the

12

record . . . suggesting that [the defendant] would not have pleaded guilty if the district court had properly informed him of the sentencing exposure that he faced"; (2) whether the defendant moved to withdraw his guilty plea after learning from the PSR that he could be sentenced under the ACCA; and (3) the strength of the government's case against him. 564 F.3d at 343-44.

Upon a closer examination, the considerations used by this Circuit in *Massenburg* create a circular logic that prevents defendants from successfully pursuing appellate relief. On the one hand, the defendant's silence at the time of the Rule 11 proceedings compels us to use the plain error standard. On the other hand, we use the defendant's silence, as evidenced by lack of statements in the record and a lack of an attempt to withdraw the guilty plea, to also deny the defendant relief. It is unjust that the same silence that compels this Court to use plain error review also compels us to deny relief under that same standard of review. The *Massenburg* Court also looks at the strength of the Government's case against the defendant. However, Rule 11 cases always occur in the context of a defendant taking a guilty plea, and defendants generally do not plead guilty when the case against them is weak. This is yet another example of how the *Massenburg* Court employs a nonsensical rubric against a defendant. As the majority points out, defendants seeking relief under plain error review should face a higher burden, but *Massenburg* makes this burden *impossible* to meet.

A proper review of the entire record in this case materially affects the outcome in *Lockhart*. *See Dominguez Benitez*, 542 U.S. at 80 (explaining that in assessing the effect of Rule 11 error, a reviewing court must look to the entire record, not to the plea

13

proceedings alone). The majority notes that at the end of the sentencing hearing Lockhart's lawyer and the United States Attorney conferred in order to make the court aware that Lockhart was allegedly informed of the ACCA enhancement even though the court had not informed him of it, and the Bill of Indictment did not list it. Though Lockhart's attorney represented to the court that he had informed Lockhart of his sentencing exposure, a *pro se* notice of appeal filed by Lockhart a mere five days later indicates otherwise. In that notice, Lockhart requested that the court appoint a new lawyer "because my last lawyer did not____me right."[*]

This portion of the record viewed in context indicates Lockhart's dissatisfaction with the advice of his counsel. Indeed, the attorney's eleventh-hour attempt to address the omission of the ACCA enhancement in the Bill of Indictment strongly supports the inference that Lockhart was not fully or properly advised by the court or his attorney of the criminal consequences of his plea. Moreover, the grievance against Lockhart's attorney communicated in his *pro se* notice of appeal can only be related to advice and communication surrounding his guilty plea given that this case never went to trial.

The deficiencies in communication to Lockhart, both by the court and his attorney, undermine the confidence this Court should have in the integrity of the sentencing court's proceedings and strongly suggests that misinformation materially impacted Lockhart's substantial rights. This is especially true because the ACCA enhancement meant that Lockhart faced a maximum of life imprisonment even with the guilty plea. Given that

---

[*] The electronic record obfuscates the missing word and the original record was destroyed.

14

Lockhart actually faced life imprisonment, rather than the ten years the district court communicated to him, there is a reasonable probability that but for being misinformed, he would not have entered into the plea. This satisfies the contested third prong of the plain error analysis and demonstrates that the error "affect[ed] the substantial rights" of Lockhart. *United States v. Olano*, 507 U.S. 725, 732 (1993).

Lockhart entered a guilty plea based on misinformation. It resulted in five additional years of jail time but could have resulted in life imprisonment. This Court chooses to uphold the circular logic of *Massenburg* and further buttress a system that tells defendants that our failure to inform you about your criminal liability does not impact your ability to choose to enter a guilty plea or stand trial. The *Massenburg* Court and now the *Lockhart* Court tells defendants that even if we misinform you, you are still better off taking a plea, a proposition that flies in the face of a criminal justice system where willful, voluntary, and informed choices are the bedrock of a system where transparency and accountability are of paramount importance. Nonetheless, given our flawed precedent, I am constrained to concur in the judgment and deny Lockhart the opportunity to make a properly informed decision about whether to exercise his constitutional right to stand trial. Now may be the time for this Court to remove the cloud of *Massenburg* that obscures a better understanding of the Supreme Court's holding in *Dominguez Benitez* so that defendants receive the protections that our Constitution promises them.

FLOYD, Circuit Judge, concurring in the judgment:

Like my colleagues, I believe that the outcome of Lockhart's appeal is constrained by our decision in *United States v. Massenburg*, 564 F. 3d 337 (4th Cir. 2009). I also believe that there are sound reasons for this Court to revisit *Massenburg* and limit its precedential scope.

In *Massenburg*, we correctly stated that in order to prevail on plain-error review, an appellant like Lockhart must show a "reasonable probability" that he would not have pleaded guilty if he had been correctly informed of his sentencing exposure. 564 F.3d at 343 (quoting *United States v. Dominguez Benitez*, 542 U.S. 74, 83 (2004)). Personally, I find that rule-statement somewhat difficult to reconcile with *Massenburg*'s analysis. Indeed, if we were to go through *Massenburg* and replace each instance of "reasonable probability" with "virtual certainty," it seems to me that the opinion would read quite well. Therein lies the problem. Although our opinion in *Massenburg* correctly recites the rule of *Dominguez Benitez*, its three-factor analysis has the regrettable effect of setting the bar too high for appellants in Lockhart's position.

Were we to apply *Dominguez Benitez* to this case directly, rather than filtering it through the prism of *Massenburg*, I cannot help but think that we would have ample reason to vacate Lockhart's conviction. After all, unlike in *Dominguez Benitez*, it is quite easy to see here how the court's error during Lockhart's Rule 11 hearing "could have had an effect on [Lockhart's] assessment of his strategic position." 542 U.S. at 85. Lockhart tells us that from the start, he expected a sentence at the low end of the recommended range. His expectation was not unreasonable, considering the relatively innocuous

16

circumstances of his offense. Since it was reasonable for him to expect a sentence at the low end of the recommended range, it was also reasonable for him to try to shave as many years off the low end of the recommended range as possible. A guilty plea would have been a rational way to accomplish that goal *before* he knew that he would be sentenced as an armed career criminal, but not after.

Consider the percentages. Taking Lockhart's PSR and the 2016 Sentencing Guidelines as our benchmark, it appears likely that if Lockhart had not been sentenced as an armed career criminal, his guilty plea would have dropped the low end of the recommended sentencing range from 5.25 years to 3.83 years—a 26.9% reduction. But because Lockhart *was* sentenced as an armed career criminal, his guilty plea had a much smaller effect and made much less sense, given his goal: his plea dropped the low end of his sentencing exposure from 15.67 years to 15 years—a mere 4.2% reduction. In essence, the initial rationale underlying Lockhart's guilty plea was rendered all-but nonsensical by his later designation as an armed career criminal.[1]

Added to this numerical analysis is the starkly odd behavior of Lockhart's counsel, and Lockhart's apparent displeasure with same (which my colleagues have aptly highlighted). These factors convince me that if we were not constrained by *Massenburg*, we would grant relief to Lockhart. This is particularly so given that, as I understand it, "reasonably probable" does not mean "more likely than not." *See Dominguez Benitez*,

---

[1] These numbers are necessarily estimates, and I do not mean to suggest that we should use this sort of quantitative analysis to decide all cases like the one at bar. The percentages referenced here are useful only insofar as they help to illustrate the logic of an argument that Lockhart makes on appeal.

542 U.S. at 86–87 (Scalia, J., concurring); *Strickland v. Washington*, 466 U.S. 668, 693-94 (1984) (distinguishing between "reasonable probability" and "more likely than not," and clarifying that the former is less demanding than the latter).

Finally, I agree with my colleagues that holding a defendant's silence against him in these circumstances is improper. When a defendant, by his apparent silence, fails to preserve his objection to a mistake made during a Rule 11 hearing, the consequence is that we review for plain error. Once we have entered the realm of plain-error review, it makes no sense to continue to hold the defendant's silence against him. Yet *Massenburg* urges us to do exactly that. "The defendant failed to register any surprise or dismay on the record," we say. "Therefore, we review for plain error. In reviewing for plain error, we note that the defendant expressed neither surprise nor dismay when informed of his actual sentencing exposure, which weighs against him now." This is quicksand; we should distance ourselves from it.

I believe that our decision in *Massenburg* has had the unintended effect of chipping away at our ability to safeguard the legitimacy of criminal-justice proceedings. This case presents an excellent opportunity for us to do some mild course-correction.