**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 17-4759**

_____

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

CHRISTIAN DON'TAE HOOD, a/k/a Chris Hood, a/k/a Beezy, a/k/a Bezzy,

Defendant - Appellant.

_____

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. Anthony John Trenga, District Judge. (1:17-cr-00080-AJT-1)

_____

Argued: January 31, 2019                                    Decided: April 16, 2019

_____

Before GREGORY, Chief Judge, and THACKER and HARRIS, Circuit Judges.

_____

Affirmed by unpublished opinion. Judge Harris wrote the opinion, in which Chief Judge Gregory and Judge Thacker joined.

_____

**ARGUED:** Douglas Adrien Steinberg, LAW OFFICES OF DOUGLAS A. STEINBERG, Alexandria, Virginia, for Appellant. Maureen Catherine Cain, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee. **ON BRIEF:** G. Zachary Terwilliger, United States Attorney, Kyle P. Reynolds, Special Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit.

PAMELA HARRIS, Circuit Judge:

A jury convicted Christian Don'tae Hood of child exploitation offenses arising from the sex trafficking of a 15-year-old girl. On appeal, Hood primarily challenges the district court's refusal to suppress incriminating statements he made after his arrest. According to Hood, although he waived his *Miranda* rights before his interrogation, his statements nevertheless were involuntary because he misunderstood the extent of the evidence against him while he was being questioned. Under well-settled precedent, however, Hood's own misapprehension about the evidence in police possession does not render his statements involuntary. Hood's remaining arguments on appeal are equally unavailing, and so we affirm the judgment of the district court.

## I.

Christian Don'tae Hood and his brother, Abdul Bangura, Jr., were indicted on charges relating to the sex trafficking of a minor victim, including a conspiracy charge, in violation of 18 U.S.C. §§ 1591(a)(1) and 1594(c). Federal law enforcement agents arrested the brothers at their home while executing a residential search warrant. That warrant expressly authorized the agents to search electronic devices recovered in the home and, if necessary, to press Hood's or Bangura's fingers on a device with a fingerprint-unlock function.

During the search and arrest, agents recovered a cell phone directly from Bangura and successfully unlocked the phone using Bangura's finger. Agents also recovered a second phone on the premises, which they attempted to unlock by placing each of Hood's

2

thumbs on the phone's sensor. Their attempts were unsuccessful, and the phone did not unlock.

After he was taken into custody, Hood agreed to be interviewed by federal agents. The agents informed Hood of his *Miranda* rights, and Hood signed a written waiver of those rights. During the interrogation that followed, Hood admitted that the phone recovered from his home belonged to him and provided agents the passcode to unlock it. Hood also identified his nickname, "Bezzy," and his old phone number – both of which connected him to an email account used to post advertisements for commercial sex with the victim. Hood further admitted that he was familiar with the website Backpage.com, on which the advertisements were posted.

Before trial, Hood moved to suppress his statements, arguing without elaboration that they were involuntary and hence inadmissible. The district court denied the motion, noting that Hood had failed to give any reason why his statements should not be considered "knowing and voluntary." J.A. 72. Nor could the court find such a reason in the record: Hood had "confirm[ed] that he understood English and was not under the influence of narcotics, he [] was provided with his *Miranda* rights verbally and took time to read his written *Miranda* warnings and signed a waiver of those rights." J.A. 72–73.

Hood also sought to suppress any evidence obtained from his cell phone, on the ground that the use of his thumbprint in an unsuccessful effort to unlock the phone constituted compelled self-incrimination in violation of the Fifth Amendment. Again, the district court disagreed, holding that "forcing a defendant to provide physical characteristics" in the form of a thumbprint is not "testimonial" and does not constitute a

3

Fifth Amendment violation. J.A. 76. Moreover, the court noted, the government did not need Hood's print to tie him to his cell phone, as his possession of the phone had been "established by other lawful means." *Id.*[1]

Just before the scheduled start of the brothers' jury trial, Bangura pleaded guilty. The court granted Hood's request for a continuance to reassess his trial strategy and consider calling Bangura as a witness in his defense. At a hearing the next day, Bangura asserted his Fifth Amendment privilege against self-incrimination and refused to testify during Hood's trial. The district court sustained Bangura's invocation of the Fifth Amendment, finding that Bangura had cause to believe that answering questions at his brother's trial would incriminate him.

Hood proceeded to trial as the sole defendant. Notably, no evidence recovered from Hood's phone was introduced during the three-day trial. Instead, the minor victim, D.H., testified against Hood, and explained that Hood had created posts on Backpage.com to advertise her sexual services. A federal agent testified to evidence that corroborated D.H.'s account of her victimization by Hood, including hotel, email, and phone records, as well as surveillance videos. And a Washington, D.C. police detective testified that messages recovered from Bangura's phone showed Bangura and Hood coordinating the posting of online advertisements for D.H.

---

[1] Hood also objected to the effort to search his phone on Fourth Amendment grounds. The district court rejected Hood's Fourth Amendment claim, and Hood does not raise it on appeal.

4

Following the close of evidence, Hood's attorney requested that the judge provide the jury a "multiple conspiracy" instruction, explaining to the jury that the government must prove the existence of a single overall conspiracy and that proof of separate conspiracies is not enough. The government opposed Hood's request, arguing that the evidence presented at trial addressed only a single conspiracy – a week-and-a-half long endeavor to sex traffic D.H. The district court agreed that the instruction was not warranted and denied Hood's request.

The jury found Hood guilty, and the court sentenced him to 180 months' imprisonment, to be followed by 10 years of supervised release. Hood timely appealed.

## II.

## A.

Hood's primary challenge on appeal is to the district court's denial of his motion to suppress. We review the district court's factual findings underlying a motion to suppress for clear error and the court's legal determinations de novo, *United States v. Pratt*, 915 F.3d 266, 271 (4th Cir. 2019), and we affirm.

We begin by clarifying what is and is not at issue in this appeal. Hood originally moved to suppress any evidence ultimately obtained from his phone on the theory that the attempt – unsuccessful – to unlock the phone with his thumb violated his Fifth Amendment right against self-incrimination. The district court rejected that claim, and the parties devote much of their briefing to arguing its merits. But all of that is beside the point in this case, because as it turns out, no evidence from the phone was admitted at

5

trial. Nor did the government use Hood's fingerprint to prove Hood's ownership or control of the phone. Whatever the propriety of the government's efforts with respect to Hood's phone, there simply is no evidence to be suppressed.

What is at issue, by contrast, is the portion of Hood's suppression motion dealing with statements he made in his post-arrest interview, some of which were introduced at trial. The district court rejected Hood's claim that those statements were involuntary, and we see no reason to disturb that holding. As the district court rightly emphasized, Hood was given his *Miranda* rights both orally and in writing before he signed a waiver, and execution of a valid *Miranda* waiver gives rise to a strong presumption that subsequent statements are voluntary, *see Missouri v. Seibert*, 542 U.S. 600, 609 (2004) (plurality opinion) (explaining that "litigation over voluntariness tends to end with the finding of a valid waiver"). And as the district court further noted, Hood's motion to suppress identified no particular basis for finding his statements involuntary – let alone the kind of "coercive police activity" that is a prerequisite for such a finding, *United States v. Whitfield*, 695 F.3d 288, 301 (4th Cir. 2012) (internal quotation marks omitted) (describing voluntariness standard).

Hood's only argument to the contrary appears to be that his waiver or his statements (or both) were involuntary because he did not know, when he agreed to speak, that the effort to unlock his phone had been unsuccessful, and thus believed that the government already had access to the information he was providing. That argument is foreclosed by well-established precedent. The agents who arrested and interviewed Hood were under no obligation to supply their suspect with information – specifically,

6

information regarding the status of their efforts to search his phone – that might have affected his decision about whether to speak and what to say. *See Moran v. Burbine*, 475 U.S. 412, 422 (1986) (law enforcement officials are not required to "supply a suspect with a flow of information to help him calibrate his self-interest in deciding whether to speak or stand by his rights"). And a suspect's misapprehension about the strength of the evidence against him is not enough to render a statement involuntary. Even if – contrary to the facts here – that misapprehension is the result of affirmative misrepresentations by the police, that alone will not render an otherwise voluntary statement inadmissible. *See Frazier v. Cupp*, 394 U.S. 731, 739 (1969) (police misrepresentation that co-defendant had confessed was insufficient to make suspect's confession involuntary); *Whitfield*, 695 F.3d at 302–03 (police misrepresentation that victim was alive and identified defendant as culprit did not render statement involuntary); *see also United States v. Jacques*, 744 F.3d 804, 812 (1st Cir. 2014) (statement is not rendered involuntary by police misrepresentation of strength of evidence against suspect); *Green v. Scully*, 850 F.2d 894, 903 (2d Cir. 1988) (same). Because Hood has identified no valid ground for deeming his waiver or statements involuntary, the district court properly denied his motion to suppress.[2]

---

[2] The government also argues that any error regarding the admission of a handful of Hood's statements at trial would have been harmless, given that the information provided by those statements also was introduced at trial through undisputedly valid sources. That Hood went by the nickname "Bezzy," for instance, was shown not only through Hood's statement, but also through D.H.'s testimony. Similarly, evidence from D.H.'s phone tied Hood to the phone number he admitted was his in his interview, and independent phone and email records tied him to the Backpage.com advertisements of

7

**B.**

On appeal, Hood also continues to press his arguments regarding his brother's assertion of a Fifth Amendment right not to testify at Hood's trial and the district court's refusal to give a "multiple conspiracy" instruction to the jury. Neither of those claims has merit, and so we affirm the judgment of the district court.[3]

First, Hood argues that the district court's refusal to compel his brother (and co-defendant) to testify at his trial violated his Sixth Amendment right to compulsory process. We review a district court's evidentiary ruling – including its refusal to call a witness – for abuse of discretion, *see United States v. Branch*, 537 F.3d 328, 342 (4th Cir. 2008), and find no abuse of discretion here.

Although the "Sixth Amendment grants a defendant the right to compel testimony by witnesses in his defense," on occasion that right may "conflict[] with a witness' privilege against self-incrimination." *United States v. Sayles*, 296 F.3d 219, 223 (4th Cir. 2002). As the district court explained, Bangura was entitled to invoke his privilege

D.H. We are inclined to agree with the government that Hood's statements played no significant role at his trial. Because we find that the admission of those statements was proper, however, we have no need to engage in harmless error analysis.

[3] Hood also filed a pro se appellate brief raising three claims not addressed in his counseled brief. First, he argues that the government engaged in prosecutorial misconduct by eliciting false testimony from a federal agent regarding the date D.H. was reported missing. Second, Hood contends that the FBI presented that same false information to the magistrate judge in its search warrant application. And third, Hood argues that the court impermissibly replaced a juror who became ill during trial. We have reviewed the record and find no merit to Hood's additional arguments. The record does not reflect that the government or law enforcement officials provided materially false information regarding the date D.H. was reported missing or that the district court's replacement of an ill juror with the first alternate was improper.

against self-incrimination even after entering his guilty plea, because the right extends through sentencing, *see Mitchell v. United States*, 526 U.S. 314, 325 (1999).  Thus, faced with a potential conflict, the district court was required to make a "particularized inquiry" into whether Bangura could legitimately refuse to answer relevant questions on the ground that the answers would incriminate him.  *Sayles*, 296 F.3d at 223 (internal quotation marks omitted).  That is precisely what the district court did here, concluding that "based on all the facts and circumstances . . . Bangura has reasonable cause to believe that answering any question that may be relevant within the scope of the offenses charged . . . might tend to incriminate him."  J.A. 291.  Hood offers no reason why this determination was an abuse of discretion, and we can find none.

Hood's final claim is that the district court erred in refusing to give a "multiple conspiracy" instruction to his jury.  Again, we review the district court's decision – this time, as to whether to give a proposed jury instruction – for abuse of discretion, *see United States v. Allen*, 491 F.3d 178, 186–87 (4th Cir. 2007), and again, we find no abuse of discretion here.

Hood was charged with conspiring with Bangura and "others, known and unknown to the grand jury," to sex traffic D.H.  J.A. 12.  His proposed "multiple conspiracy" instruction would have informed the jury that it could convict him of conspiracy only in connection with that single overall conspiracy, as charged in the indictment, and not for participating in some separate or independent conspiracy.  But an instruction of that kind is not warranted "unless the proof at trial demonstrates that [the defendant was] involved only in separate conspiracies unrelated to the overall

9

conspiracy," *United States v. Bartko*, 728 F.3d 327, 344 (4th Cir. 2013) (internal quotation marks omitted), and there is no such proof in this case. Instead, the government presented evidence of one and only one overall conspiracy: a discrete conspiracy of under two weeks duration, entered into by Hood, Bangura and others, to exploit a particular minor victim by selling her sexual services.

Hood's argument to the contrary is not well developed, but it appears to be as follows: At trial, the government's case involved an unindicted co-conspirator, Julius Ravnall, who was responsible for booking certain hotel rooms in connection with the conspiracy. And according to Hood, the evidence showed only communications between Ravnall and Bangura, and no communications between Ravnall and himself – indicating, Hood believes, the presence of multiple separate conspiracies. But that is not how conspiracy law works. There is no requirement that every member of a single overall conspiracy know or communicate with each other. *United States v. McCoy*, 895 F.3d 358, 364 (4th Cir. 2018) ("The fact that McCoy claims he doesn't know Rodney Moore doesn't preclude the two men from having participated in the same conspiracy."). Whether Hood dealt directly with Ravnall, in other words, has no bearing on whether the evidence presented at trial demonstrated the existence of more than one conspiracy. And because there is no other evidence of multiple conspiracies in this case, the district court did not abuse its discretion when it refused to give the requested instruction.

## III.

For the foregoing reasons, we affirm the judgment of the district court.

10

*AFFIRMED*