PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
　　　　　　　*Plaintiff-Appellee,*

v.

JOSE ALEJANDRO MASTRAPA,
　　　　　　　*Defendant-Appellant.*

No. 06-4512

Appeal from the United States District Court
for the Western District of Virginia, at Harrisonburg.
Glen E. Conrad, District Judge.
(5:05-cr-00038-gec)

Argued: September 28, 2007

Decided: December 12, 2007

Before NIEMEYER and DUNCAN, Circuit Judges,
and T. S. ELLIS, III, Senior United States District Judge for the
Eastern District of Virginia, sitting by designation.

---

Vacated and remanded by published opinion. Judge Niemeyer wrote
the opinion, in which Judge Duncan and Senior Judge Ellis joined.

---

## COUNSEL

**ARGUED:** Neal Lawrence Walters, SCOTT & KRONER, P.C.,
Charlottesville, Virginia, for Appellant. Jean Barrett Hudson,
OFFICE OF THE UNITED STATES ATTORNEY, Charlottesville,
Virginia, for Appellee. **ON BRIEF:** David I. McCaskey, Staunton,
Virginia; Michael Castiglione, Third Year Law Student, Matthew

Dunne, Third Year Law Student, UNIVERSITY OF VIRGINIA SCHOOL OF LAW, Appellate Litigation Clinic, Charlottesville, Virginia, for Appellant. John L. Brownlee, United States Attorney, Roanoke, Virginia, Ray B. Fitzgerald, Jr., Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Charlottesville, Virginia, for Appellee.

---

**OPINION**

NIEMEYER, Circuit Judge:

After Jose Alejandro Mastrapa agreed with two other men to transport several bags of groceries to a hotel room in Shenandoah County, Virginia, undercover agents in the hotel found five pounds of methamphetamine among the groceries and arrested Mastrapa along with the two others. Mastrapa claimed that he had agreed to give the two men a ride and help carry their grocery bags but that he did not know them or what they were doing. Nonetheless, claiming that he hoped to minimize his sentence, Mastrapa pleaded guilty to conspiracy to distribute 500 grams or more of methamphetamine, in violation of 21 U.S.C. §§ 846 and 841(a)(1). At his Rule 11 colloquy, however, Mastrapa refused, despite questioning by the district court, to admit to the factual basis necessary to support the charges against him, and the record included no evidence of Mastrapa's *mens rea*. The district court nonetheless proceeded to accept Mastrapa's guilty plea and sentenced him to 120 months' imprisonment.

Because we conclude that Mastrapa did not admit the necessary *mens rea* before entering his plea and the record contained no factual basis to support that element of the offense, we vacate the judgment entered on May 8, 2006, and remand for a new Rule 11 proceeding.

I

Through a confidential source, the Drug Enforcement Agency ("DEA") made an undercover purchase of slightly less than one pound of methamphetamine on June 3, 2005, from Dany Vladir Medina-Lovos ("Lovos") and Fidel Angel Chicas-Hernandez

("Hernandez"). After completing that transaction, the confidential source sought to arrange another purchase for 15 pounds of methamphetamine from the two men. On June 27, 2005, Lovos called the confidential source and said that he could obtain five pounds, which he would sell for $50,000, and that if that deal went well, he would later obtain the additional ten pounds. The confidential source agreed, and thereupon the two arranged a transaction for the five pounds the next day — June 28, 2005 — in a hotel room in Shenandoah County, Virginia.

On June 28, shortly before the transaction, Lovos called the confidential source and told him that "they" would be arriving in two separate vehicles, one of which would contain the drugs and would be driven by his "cousin." Lovos explained that he wanted to use two vehicles so that he could arrange to see the money before delivering the drugs. Lovos and Hernandez arrived at the hotel in a blue Honda and met with the confidential source for the purpose of seeing the money. When the confidential source refused to show Lovos and Hernandez the money until he had seen the drugs, Hernandez left in the blue Honda, leaving Lovos at the hotel room, and drove to a Burger King parking lot, where the defendant Mastrapa was parked in a brown Ford van loaded with several grocery bags. Hernandez summoned Mastrapa and the two drove back to the hotel in the two vehicles. Hernandez and Mastrapa then carried the grocery bags from Mastrapa's van into the hotel room. After the confidential source observed five pounds of methamphetamine in the grocery bags, Lovos, Hernandez, and Mastrapa were arrested by law enforcement officers.

A grand jury indicted Mastrapa and the two others, as well as the later uncovered supplier of the methamphetamine, for conspiracy to distribute 500 grams or more of a mixture or substance containing methamphetamine, in violation of 21 U.S.C. §§ 846, 841(a)(1) and 841(b)(1)(A), and Mastrapa and the two others for actually distributing 500 grams or more of a mixture or substance containing methamphetamine on June 28, 2005, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A).

Shortly before trial, Mastrapa decided to plead guilty to the conspiracy count without a written plea agreement, as he understood that

Lovos and Hernandez would be testifying against him, and the government agreed to dismiss the distribution count. A magistrate judge conducted the hearing at which Mastrapa was to tender the plea in accordance with Federal Rule of Criminal Procedure 11. Because Mastrapa was a political refugee of Cuba and neither spoke nor understood English, an interpreter was present to translate.

At the plea hearing, Mastrapa admitted to driving the brown Ford van and to carrying the grocery bags into the hotel room, but he stated that he had not, before June 28, known Lovos and Hernandez and that he did not know that anything was in the bags other than groceries. The magistrate judge, however, relied on an affidavit presented by a special agent of the DEA to find a factual basis for Mastrapa's plea. That affidavit stated that through surveillance Mastrapa was observed in the brown Ford van at the Burger King parking lot; that he drove the van to the hotel where the transaction was consummated; and that he helped carry several grocery bags from the van to the hotel room. There was no other statement in the affidavit about Mastrapa's involvement in the scheme or his knowledge of its true nature. On noting, however, that Mastrapa did not specifically object to these facts contained in the affidavit, the magistrate judge stated that he would recommend acceptance of the guilty plea. Several weeks later, the district judge accepted that recommendation without further inquiry, by order dated March 6, 2006.

At sentencing two months later, Mastrapa again stated that he pleaded guilty only to driving the van and to carrying the grocery bags into the hotel room but that he did not know Lovos or Hernandez or what they were about. Before proceeding with the sentencing, the court observed, "I guess this is an *Alford* plea," and Mastrapa's attorney responded that "that would be one way of presenting this, yes, sir." The district court then sentenced Mastrapa to the statutory minimum of 120 months' imprisonment. His counsel filed this appeal, submitting a brief pursuant to *Anders v. California*, 386 U.S. 738 (1967), and representing that after a "conscientious examination of the entire record . . . Mastrapa has no meritorious grounds for direct appeal of his conviction and sentence." His counsel did question, however, the sufficiency of the guilty plea's factual basis.

Concerned about the adequacy of the factual basis for the guilty plea, we invited the parties to submit supplemental briefs about the

sufficiency of the Rule 11 proceeding and appointed the University of Virginia School of Law Appellate Litigation Clinic to file a brief on Mastrapa's behalf. The sole issue now presented is whether there was sufficient evidence in the record to provide a factual basis for Mastrapa's guilty plea, as required by Federal Rule of Criminal Procedure 11(b)(3).

## II

For the first time on appeal, Mastrapa contends that "there was an insufficient factual basis in the record to support [his] guilty plea," claiming that there was "no evidence in the record that [he] knew he was carrying illegal drugs and thus knew he was participating in an illegal conspiracy." *See* Fed. R. Crim. P. 11(b)(3); *United States v. DeFusco*, 949 F.2d 114, 120 (4th Cir. 1991). He requests that we notice and correct this error under Federal Rule of Criminal Procedure 52(b) by vacating the judgment and remanding for further Rule 11 proceedings.

The government contends — relying on the district court's wide discretion to determine whether a factual basis for a guilty plea existed and noting that its evidentiary burden was minimal — that because Mastrapa drove the brown Ford van, which was one of the two vehicles that Lovos had told the confidential source would be coming with the drugs, "the only rational inference is that Mastrapa had a role, and even a particularly trusted role, in the conspiracy from the beginning." Additionally, the government argues that the fact that the confidential source was able to identify the methamphetamine among the groceries in the grocery bags "supports the reasonable inference that Mastrapa knew that the bags contained drugs." The government thus asserts that the evidence showed that "more than a slight connection" existed between Mastrapa and the drug-trafficking conspiracy in which Lovos and Hernandez were concededly involved.

Because Mastrapa did not challenge the Rule 11 proceedings in the district court, we review his challenge now for plain error. *See United States v. Martinez*, 277 F.3d 517, 524-27 (4th Cir. 2002). Under Federal Rule of Criminal Procedure 52(b), "[a] plain error that affects substantial rights may be considered [on appeal] even though it was not brought to the [trial] court's attention," and we may correct a plain

error that was material or affected the defendant's substantial rights if we conclude that the "error seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings." *United States v. Olano*, 507 U.S. 725, 732 (1993) (internal quotation marks omitted); *see also United States v. Strickland*, 245 F.3d 368, 376 (4th Cir. 2001).

In this case, Mastrapa pleaded guilty to Count I of the indictment, charging him with "knowingly . . . conspir[ing]" with others "to knowingly and intentionally distribute, and possess with the intent to distribute, 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine," in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A). *See* 21 U.S.C. § 846. To establish a § 846 violation, the government would have to prove (1) that Mastrapa entered into an agreement with one or more persons to engage in conduct that violated 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A); (2) that Mastrapa had *knowledge* of that conspiracy; and (3) that Mastrapa *knowingly and voluntarily* participated in the conspiracy. *See Strickland*, 245 F.3d at 384-85; *United States v. Wilson*, 135 F.3d 291, 306 (4th Cir. 1998). Mastrapa's knowledge, accordingly, was an essential element to his guilt for violation of § 846.

The Rule 11 proceeding was conducted by a magistrate judge, who ultimately recommended to the district judge that Mastrapa's tender of a guilty plea be accepted. The proceeding was conducted entirely through an interpreter, inasmuch as Mastrapa did not speak nor understand English. When the magistrate judge inquired into the factual basis for the plea, the government introduced the affidavit of a DEA agent filed earlier in the proceedings to support a criminal complaint and arrest warrant for the defendants. After the affidavit was read to Mastrapa in Spanish, the magistrate judge inquired of Mastrapa whether anything in the affidavit was "untrue." Mastrapa first objected to a reference in the affidavit to his participation in a telephone call with conspirators while he was at the Burger King parking lot, denying he participated in any such call. That portion of the affidavit, however, had already been stricken by the government and was not proffered as a factual basis for the guilty plea. When the court inquired further whether there was anything else in the affidavit that was untrue, Mastrapa replied, "I'm just saying that I was used to carry

[the bags] there. I did not know. I did not know what they were doing." The court inquired further, "Is there anything else [in the affidavit] you contest besides that?" And Mastrapa replied, "Well, there are a lot of things." Without pursuing the matter further, the magistrate judge then concluded, "I take that to mean nothing else comes to mind right now that he contests." The court thereupon stated, "After receiving the evidence concerning the evidentiary basis for the plea of guilty to Count I, . . . it is the recommendation of this Court that the plea be accepted and I will make that recommendation in writing to the federal district judge."

The district court "accepted in whole" the recommendation of the magistrate judge by order dated March 6, 2006, and, without further comment, adjudged Mastrapa guilty of the conspiracy count.

Therefore, the only evidence in the record on which to find a factual basis for Mastrapa's guilty plea was the affidavit of a special agent of the DEA, which was considered in the context of Mastrapa's denying any knowledge of the conspiracy. While that affidavit described a conspiracy between Lovos and Hernandez and how the June 28, 2005 transaction was arranged between a confidential source and Lovos, the only facts stated in the affidavit about Mastrapa's role were that surveillance observed that when Hernandez drove from the hotel room to the Burger King parking lot, he met Mastrapa, who was in a brown Ford van, and that Mastrapa was then observed to drive the van to the hotel where Hernandez and Mastrapa unloaded several grocery bags from the van and carried them into the hotel room. There was no other evidence given about whether Mastrapa was involved in planning the transaction, overheard its plans, or otherwise knowingly participated in a drug transaction. Indeed, Mastrapa advised the magistrate judge that he did not know Lovos and Hernandez and that he did not know what was going on. Throughout the proceedings below, he consistently stated that these co-conspirators asked him to give them a ride and to help them carry groceries and that he knew neither of them nor anything about their drug transactions.

The facts that Mastrapa protested the *mens rea* element of the conspiracy offense and that the affidavit failed to fill the gap should have alerted the magistrate judge to explore further the discrepancy

between Mastrapa's acknowledgment of his guilt and his understanding of what the crime entailed. As revealed during sentencing, Mastrapa apparently thought that driving the vehicle and carrying the groceries were sufficient to convict him even without knowledge of the persons for whom he was performing those tasks, what they were doing, or the fact that drugs were involved.

Because Mastrapa protested having any knowledge of the conspiracy or the drug crime and the only evidence in the record was the affidavit of the DEA agent, which likewise failed to provide evidence of *mens rea*, the district court could not have found a sufficient factual basis for the *mens rea* element of the conspiracy offense for which it adjudged Mastrapa guilty. *See Montgomery v. United States*, 853 F.2d 83, 85-86 (2d Cir. 1988) (finding insufficient factual basis for plea when the record did not show any admission by the defendant that he participated in an illegal conspiracy).

Telling in this case is the fact that Mastrapa never changed his position. In addition to his statements to the magistrate judge during the Rule 11 proceeding, Mastrapa also told the probation officer that he did not know what was going on during the drug transaction, and he said the same thing to the district court at sentencing. When, at sentencing, the district court expressed concern about whether Mastrapa could receive credit for acceptance of responsibility, Mastrapa stated:

> I pled guilty to what I did. I pled guilty to taking a bag to a hotel. I had never been with those people, involved with them at any time, at any place. They just asked for a ride and for me to take that bag for them. I never knew what was in that bag. There was a lot of food there inside of that bag. I did not know there was anything else in there. That's what I pled guilty to, not to selling drugs, not to being involved in drugs, not with having anything to do with people that have to do with drugs.

> I've always been the type that goes from my job to my family. I work 15 hours. I go from my home to my job and to my family.

> Your Honor, I'm asking of you, I have my family here. My wife is by herself. She has no one to help her. I'm asking you for forgiveness for what I did, for taking that bag there. I did not know what those people were doing. I was never involved in any of that. If I must ask for forgiveness of that, I am asking for forgiveness of that from you, Your Honor.

The district court thus found it necessary to recharacterize what went on before the magistrate judge, even though the recharacterization was inconsistent with the record. Obviously troubled, the court observed, "I guess this is an *Alford* plea." Mastrapa's counsel then acknowledged, albeit somewhat unpersuaded, that that could be so. Yet, an *Alford* plea was never discussed, tendered, or agreed to by Mastrapa.

An *Alford* plea refers to a plea in which the defendant consents to a prison sentence even though "he is unwilling or unable to admit his participation in the acts constituting the crime." *North Carolina v. Alford*, 400 U.S. 25, 37 (1970). The plea can be accepted, however, only if the defendant (1) "intelligently concludes that his interests require entry of a guilty plea" *and* (2) "*the record before the judge contains strong evidence of actual guilt*." *Id.* (emphasis added).

Even if an *Alford* plea had been tendered and accepted, the outcome could be no different. We have repeated uniformly that the court must find a factual basis even for an *Alford* plea. *See United States v. Morrow*, 914 F.2d 608, 611-12 (4th Cir. 1990). As we noted in *Morrow*, "[a]lthough excellent reasons exist for permitting an *Alford* plea, the logic underlying this type of plea is counter-intuitive. . . . It is essential that a court accepting an *Alford* plea make every effort to ensure that a defendant recognize precisely what his plea entails." *Id.* at 612 n.6 (internal quotation marks and citation omitted). The policy underlying these requirements is constitutionally based to protect the innocent and to ensure that "guilty pleas are a product of free and intelligent choice." *Alford*, 400 U.S. at 38 n.10.

Here, Mastrapa's guilty plea was accepted at the conclusion of the Rule 11 hearing, not on the basis of *Alford*, but on the erroneous assumptions that the DEA's affidavit contained enough evidence to support a factual basis for the crime and that Mastrapa accepted that

factual basis. When the district court apparently recognized this failure that had occurred in the Rule 11 proceeding, it recharacterized that hearing as one on an *Alford* plea. But then it never explained an *Alford* plea to Mastrapa, nor enlisted his agreement to enter into one. Even if it had done so, however, it still would have had to be sure that Mastrapa's circumstances fulfilled the requirements of *Alford*, including a record that demonstrated actual guilt. *Alford*, 400 U.S. at 37; *Morrow*, 914 F.2d at 611-12.

Federal Rule of Criminal Procedure 11(b)(3) provides, "Before entering judgment on a guilty plea, the court *must* determine that there is a factual basis for the plea." (Emphasis added). The rule is intended to ensure that "the court make clear exactly what a defendant admits to, and whether those admissions are factually sufficient to constitute the alleged crime." *DeFusco*, 949 F.2d at 120; *United States v. Fountain*, 777 F.2d 351, 355 (7th Cir. 1985). The requirement to find a factual basis is designed to "protect a defendant who is in the position of pleading voluntarily with an understanding of the nature of the charge but without realizing that his conduct does not actually fall within the charge." Fed. R. Crim. P. 11 advisory committee's notes (1966).

In determining whether a guilty plea has a factual basis, the district court need not rely only on the Rule 11 plea colloquy; it "may conclude that a factual basis exists from anything that appears on the record." *DeFusco*, 949 F.2d at 120. We review the lower court's determination for abuse of discretion. *See Martinez*, 277 F.3d at 531. And we will not find an abuse of discretion so long as the district court could reasonably have determined that there was a sufficient factual basis based on the record before it. *See id.*; *United States v. Mitchell*, 104 F.3d 649, 652 (4th Cir. 1997).

In this case, we find that the district court could not have found a factual basis in the record for Mastrapa's guilty plea in that the record failed to demonstrate that Mastrapa had knowledge of the conspiracy and that he knowingly and voluntarily participated in the conspiracy. *See Strickland*, 245 F.3d at 384-85; *Wilson*, 135 F.3d at 306. It is apparent from the transcript of the Rule 11 hearing that the magistrate judge was put on notice that there was a deficiency in the factual basis for the guilty plea. The court resolved the problem by asking

Mastrapa whether he had any disagreements with the DEA's affidavit and, when Mastrapa responded that there were "a lot of things" that he disputed, by taking that answer to mean nothing further is disputed: "I take [Mastrapa's answer] to mean nothing else comes to mind right now that he contests." But even if nothing were contested, the DEA affidavit, which was written to obtain an arrest warrant, failed to provide evidence that Mastrapa's role was knowing. The affidavit stated simply that Mastrapa drove the van with the grocery bags in it and helped carry the grocery bags into the hotel room.

And the district court's resolution of the problem by concluding, "I guess this is an *Alford* plea," did not resolve it in accordance with either *Alford* or Rule 11. Neither the magistrate judge nor the district judge engaged Mastrapa in any discussion about an *Alford* plea.

Most troubling to us is the fact that the record in this case seems to reveal a basic misunderstanding by Mastrapa of what implicated him in the conspiracy. Even when allocuting, he asked the court "for forgiveness for what I did, for taking that bag there. I did not know what those people were doing. I was never involved in any of that. If I must ask for forgiveness of that, I am asking for forgiveness of that from you, Your Honor." He explained that he pled guilty "not to selling drugs, not to being involved in drugs, not [to] having anything to do with people that have to do with drugs." He thought that by carrying the bag that had "a lot of food" inside of it, even though he did not know it had drugs, he had unwittingly participated in a conspiracy for which the American system would imprison him despite his lack of knowledge. This apparent misunderstanding by Mastrapa has resulted in a flawed guilty plea that affected Mastrapa's substantial rights. *See Olano*, 507 U.S. at 734. We conclude therefore that it is appropriate to notice the district court's plain error in this case.

We also decide to exercise our discretion to correct the error. To allow a district court to accept a guilty plea from a defendant who did not admit to an essential element of guilt under the charge and did not voluntarily choose to enter an *Alford* plea would surely cast doubt upon the integrity of our judicial process, particularly when Rule 11 proceedings were conducted entirely through an interpreter. *See Olano*, 507 U.S. at 735-36.

Because Mastrapa challenged the sufficiency of the factual basis for his plea before our court and because we find that the factual basis was insufficient, the appropriate remedy in these circumstances is to vacate the judgment and remand to the district court for a new Rule 11 proceeding. *See United States v. Carr*, 271 F.3d 172, 180-81 (4th Cir. 2001). In *Carr*, we adopted a "two remedy rule." *Id.* at 180. When the error arises from the court's state of mind (such as insufficient factual basis), the remand would be for a limited additional inquiry into the factual basis, and when the error arises from the defendant's misperception (such as lack of voluntariness and knowledge sufficient for the plea), the remand would be for a new Rule 11 proceeding. *Id.* at 180-81.

Although Mastrapa's challenge to the proceedings and our holding rest on the insufficiency of the factual basis, we note that this case presents serious questions as to Mastrapa's knowledge regarding his guilty plea and the conduct to which he pleaded guilty. In *Carr*, we noted:

> A Rule 11 record that fails to reflect that the defendant voluntarily and knowingly entered a guilty plea requires a different cure than a record that *does* demonstrate the requisite knowledge by the defendant, but fails to sufficiently reflect the district court's basis for accepting the plea. When the record is deficient as to the defendant's state of mind — and this deficiency affects the defendant's substantial rights — the defendant may be entitled to plead anew.

*Id.* While the distinction between the court's state of mind and the defendant's misperception is not clearly delineated in *Carr*, the Advisory Committee Notes to Rule 11 do make clear that "[t]he normal consequence of a determination that there is not a factual basis for the plea would be for the court to set aside the plea and enter a plea of not guilty." Fed. R. Crim. P. 11(b)(3) advisory committee notes (1966). Thus, during the proceedings on remand, the district court should consider the record as a whole, as it relates both to the voluntariness and knowledge of the plea and to the factual basis for the plea, and proceed appropriately upon its conclusions on these matters.

*VACATED AND REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION*