**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 18-4578

UNITED STATES OF AMERICA,

Plaintiff – Appellee,

v.

MICHAEL ANDREW GARY,

Defendant – Appellant.

Appeal from the United States District Court for the District of South Carolina, at Columbia.  Joseph F. Anderson, Jr., Senior District Judge.  (3:17-cr-00809-JFA-1)

Argued:  December 11, 2019                    Decided:  March 25, 2020

Before GREGORY, Chief Judge, FLOYD, and THACKER, Circuit Judges.

Vacated and remanded by published opinion.  Chief Judge Gregory wrote the opinion, in which Judge Floyd and Judge Thacker joined.

**ARGUED**:  Kimberly Harvey Albro, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Columbia, South Carolina, for Appellant.  Alyssa Leigh Richardson, OFFICE OF THE UNITED STATES ATTORNEY, Columbia, South Carolina, for Appellee.  **ON BRIEF**:  Sherri A. Lydon, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Columbia, South Carolina, for Appellee.

GREGORY, Chief Judge:

Michael Andrew Gary appeals his sentence following a guilty plea to two counts of possession of a firearm and ammunition by a person previously convicted of a felony, in violation of 18 U.S.C. § 922(g)(1). Gary contends that two recent decisions—the Supreme Court's decision in *Rehaif v. United States*, 139 S. Ct. 2191 (2019), where the Court held that the government must prove not only that a defendant charged pursuant to § 922(g) knew he possessed a firearm, but also that he knew he belonged to a class of persons barred from possessing a firearm, and this Court's *en banc* decision in *United States v. Lockhart*, 947 F.3d 187 (4th Cir. 2020), in which this Court considered the impact of *Rehaif* on a defendant's guilty plea—require that his plea be vacated.

Upon consideration of the parties' arguments, we hold that Gary's guilty plea was not knowingly and intelligently made because he did not understand the essential elements of the offense to which he pled guilty. Because the court accepted Gary's plea without giving him notice of an element of the offense, the court's error is structural. We therefore vacate his guilty plea and convictions and remand the case to the district court for further proceedings.

I.

On January 17, 2017, Gary was arrested following a traffic stop for driving on a suspended license. Gary's cousin, Denzel Dixon, was a passenger in the vehicle. During an inventory search of the vehicle, officers recovered a loaded firearm and a small plastic bag containing nine grams of marijuana. Gary admitted to possession of both the gun and

2

marijuana and was charged under state law with possession of a firearm by a convicted felon.

Five months later, on June 16, 2017, officers encountered Gary and Dixon outside a motel room while patrolling the motel's parking lot. The officers detected the odor of marijuana, and as they approached, Gary and Dixon entered the back seat of a vehicle. Dixon had a marijuana cigarette in his lap. The men consented to a personal search, and the officers found large amounts of cash on both men and a digital scale in Dixon's pocket. After receiving permission to search the vehicle, the officers found a stolen firearm, ammunition, "a large amount" of marijuana in the trunk, and baggies inside a backpack. J.A. 105. Gary claimed the gun was his and admitted that he regularly carried a firearm for protection. Dixon claimed ownership of the marijuana. Gary was arrested and charged under state law with possession of a stolen handgun. Gary had, at the time of his arrests, a prior felony conviction for which he had not been pardoned.

Gary was indicted in federal court and later pled guilty without a plea agreement to two counts of possession of a firearm and ammunition after having been convicted of a felony, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).[1] During his Rule 11 plea colloquy, the government recited facts related to each of his firearm possession charges. The court also informed Gary of the elements it understood the government would be required to prove if he went to trial: (1) that Gary had "been convicted of a crime punishable by imprisonment for a term exceeding one year;" (2) that he "possessed a

---

[1] The state law charges against Gary were nolle prossed.

3

firearm;" (3) that the firearm "travelled in interstate or foreign commerce;" and (4) that he "did so knowingly; that is that [he] knew the item was a firearm and [his] possession of that firearm was voluntarily [sic] and intentional." J.A. 31. Gary was not informed that an additional element of the offense was that "he knew he had the relevant status when he possessed [the firearm]." *Rehaif*, 139 S. Ct. at 2194. The district court accepted Gary's plea and sentenced him to 84 months on each count, to run concurrently.

Gary appealed his sentence to this Court.[2] During the pendency of his appeal, Gary filed a letter pursuant to Federal Rule of Appellate Procedure 28(j) asserting that the Supreme Court's recent decision in *Rehaif*, 139 S. Ct. at 2191, is relevant to his appeal. *See* Fed. R. App. P. 28(j). Gary further noted that this Court, sitting *en banc*, heard oral argument in *Lockhart*, in which counsel argued the impact of *Rehaif* on the defendant's guilty plea. Gary asserted that *Rehaif*, as well as this Court's opinion in *Lockhart*, would likely impact his case because he pled guilty to two counts of possession of a firearm after having been convicted of a felony in violation of 18 U.S.C. § 922(g)(1) without being informed, as required by *Rehaif*, that an element of his offense was that he knew his prohibited status at the time he possessed the firearm.

---

[2] At sentencing, the district court, over Gary's objection, imposed a four-level specific offense enhancement for possessing a gun in connection with another felony offense—possession with intent to distribute marijuana—based on the "large amount" of marijuana Dixon possessed on June 16, 2017. Gary objected to the enhancement on the grounds that (1) he had no knowledge of the marijuana, (2) Dixon, not Gary, was charged with possession with intent to distribute the marijuana, and (3) Dixon admitted the marijuana was his. Because we find that the invalidity of Gary's guilty plea is dispositive of this appeal, we cannot and do not address the appropriateness of any sentence imposed based on the plea.

We invited the parties to file supplemental briefs addressing what impact, if any, *Rehaif* may have on Gary's convictions.[3] This Court has since decided *Lockhart*, but limited its holding to its unique facts, finding that the two errors committed in Lockhart's case—the failure to properly advise him of his sentencing exposure under the Armed Career Criminal Act, 18 U.S.C. § 924(e), and the *Rehaif* error—"in the aggregate" were sufficient to establish prejudice for purposes of plain error review. *Lockhart*, 947 F.3d at 197. We answer today the question *Lockhart* did not: "whether a standalone *Rehaif* error requires automatic vacatur of a defendant's [guilty] plea, or whether such error should be reviewed for prejudice under [*United States v.*] *Olano*[, 507 U.S. 725, 732 (1993)]." *Lockhart*, 947 F.3d at 196. We find that a standalone *Rehaif* error satisfies plain error review because such an error is structural, which per se affects a defendant's substantial rights. We further find that the error seriously affected the fairness, integrity and public reputation of the judicial proceedings and therefore must exercise our discretion to correct the error.

## II.

Because Gary did not attempt to withdraw his guilty plea in the district court, we review his plea challenge for plain error. *United States v. McCoy*, 895 F.3d 358, 364 (4th Cir. 2018). To succeed under plain error review, a defendant must show that: (1) an error

---

[3] "[W]hen an intervening decision of this Court or the Supreme Court affects precedent relevant to a case pending on direct appeal, an appellant may timely raise a new argument, case theory, or claim based on that decision while his appeal is pending without triggering the abandonment rule." *United States v. White*, 836 F.3d 437, 443–44 (4th Cir. 2016), *abrogated on other grounds by United States v. Stitt*, 139 S. Ct. 399 (2018).

occurred; (2) the error was plain; and (3) the error affected his substantial rights. *Olano*, 507 U.S. at 732; *United States v. Knight*, 606 F.3d 171, 177 (4th Cir. 2010). We retain the discretion to correct such an error but will do so only if the error "seriously affects the fairness, integrity or public reputation of judicial proceedings." *Olano*, 507 U.S. at 732 (internal quotation marks omitted). With this standard in mind, we turn to the instant case.

Gary argues the first two prongs of plain error analysis are established by the decision in *Rehaif* itself—that an error occurred and that it was plain. He contends that the third prong, which requires Gary to show an effect on his substantial rights, is satisfied as well. Without notice that the government was required to prove an additional element not previously disclosed at the time of his guilty plea, Gary argues that he could not have knowingly and intelligently pled guilty, rendering his plea constitutionally invalid.[4]

The government concedes that the district court committed plain error in failing to inform Gary of the *Rehaif* element, but contends that omission of this element from the plea colloquy did not affect Gary's substantial rights because there is overwhelming

---

[4] Gary also states that the government's omission of the knowledge-of-status element from his indictment further supports a finding that he was not informed of the true nature of the offense and therefore could not knowingly and intelligently plead guilty. Appellee's Supp. Br. 7. He contends that a conviction based on an indictment where neither the grand jury nor the defendant was informed of all the elements of the offense, together with the omission of the same element from both the indictment and the plea colloquy, affected his substantial rights. *Id.* at 8. Beyond these statements, however, Gary presents no argument regarding the sufficiency of his indictment or whether it constitutes a separate ground for the vacatur of his guilty plea. As "[i]t is not the practice of this court to consider an argument that has not been developed in the body of a party's brief," Gary's failure to address the validity of the indictment is deemed an abandonment of the issue. *Kinder v. White*, 609 F. App'x 126, 133 (4th Cir. 2015); *see also* Fed. R. App. P. 28(a)(8)(A); *White*, 836 F.3d at 443.

evidence that he knew of his felony status prior to possessing the firearms.[5] The government also notes that since *Rehaif* was decided, numerous circuits applying *Olano*'s plain error standard have determined that there is no effect on a defendant's substantial rights where the evidence shows that the defendant knew of his status as a prohibited person at the time of his gun possession. *See, e.g.*, *United States v. Burghardt*, 939 F.3d 397, 404 (1st Cir. 2019) (plain error did not affect substantial rights where there was "overwhelming proof" defendant had previously been sentenced to more than one year in prison).[6]

But the decisions cited by the government are distinguishable from Gary's case in at least one key respect—the courts did not consider whether the district court's acceptance of a guilty plea without informing the defendant of every element of the offense was a

___

[5] In support of its argument, the government notes that Gary's presentence report lists a 2014 conviction for second degree burglary, for which Gary was sentenced to eight years suspended upon service of three years. Three of those eight suspended years were later revoked for a probation violation. And at the time of that conviction, Gary had already served 691 days in custody and received credit for time served for the burglary charge. J.A. 107–113.

[6] *See also*, *e.g.*, *United States v. Denson*, 774 F. App'x 184, 184–85 (5th Cir. 2019) (unpublished) (error did not affect substantial rights where defendant stipulated he had been convicted of a felony offense before possessing a firearm); *United States v. Bowens*, 938 F.3d 790, 797 (6th Cir. 2019) ("defendants cannot show that but for the error, the outcome of the proceeding would have been different"); *United States v. Williams*, 946 F.3d 968, 973 (7th Cir. 2020) (finding no effect on substantial rights where defendant served over a decade in prison for murder before committing firearm offense); *United States v. Hollingshed*, 940 F.3d 410, 415–16 (8th Cir. 2019) (substantial rights not affected where defendant sentenced to 78 months and served four years and thus had to have been aware of his felony status); *United States v. Benamor*, 937 F.3d 1182, 1189 (9th Cir. 2019) (substantial rights prong not met where defendant spent nine years in prison on various felony convictions before his firearm arrest); *United States v. Reed*, 941 F.3d 1018, 1021–22 (11th Cir. 2019) (defendant failed to establish errors affected his substantial rights where he had eight previous felony convictions and had served at least 18 years in prison before he was arrested for possession of a firearm).

constitutional error that rendered his guilty plea invalid. Consequently, no circuit has yet addressed the question of whether this error is a structural error that affects the substantial rights of the defendant. We find that Gary did not knowingly and intelligently plead guilty because he was not fully informed during his plea colloquy of the elements the government had to prove to convict him of the § 922(g) offenses, and that this type of error—this denial of due process—is a structural error that requires the vacatur of Gary's guilty plea and convictions.

## III.

## A.

We agree with the parties that the first two prongs of *Olano* plain error review have been met by the district court's failure to give Gary notice of the *Rehaif* element of the § 922(g) offense. First, the district court's acceptance of Gary's plea was error. Federal Rule of Criminal Procedure 11 requires that before accepting a plea of guilty, the court must inform a defendant of, and confirm that he understands, the nature of the charge to which he is pleading. Fed. R. Crim. P. 11(b)(G). Rule 11's purpose is to ensure that a defendant is fully informed of the nature of the charges against him and the consequences of his guilty plea. *See* Fed. R. Crim. P. 11(b). Certainly, the district court's acceptance of Gary's plea without informing him the government was required to prove an additional element was error that violated the requirements of Rule 11. *See Lockhart*, 497 F.3d at 196.

Moreover, the error was plain. To be "plain," an error must be "clear or obvious at the time of appellate consideration." *Ramirez-Castillo*, 748 F.3d at 215 (citations and internal quotation marks omitted); *see also Olano*, 507 U.S. at 734; *Henderson*, 133 S. Ct.

8

at 1130 (internal quotation marks omitted).  An error is clear or obvious "if the settled law of the Supreme Court or this circuit establishes that an error has occurred."  *Ramirez-Castillo*, 748 F.3d at 215 (citing *United States v. Carthorne*, 726 F.3d 503, 516 (4th Cir. 2013)).

This was the case here.  At the time of Gary's guilty plea, the parties and the district court relied on this Court's decision in *United States v. Langley*, 62 F.3d 602, 606 (4th Cir. 1995) (*en banc*), *abrogated by Rehaif*, 139 S. Ct. at 2191, wherein this Court had held that knowledge of one's prohibited status was not a required element of a § 922(g) offense.  But after the Supreme Court rendered its decision in *Rehaif*, and while Gary's appeal was pending, this Court decided *Lockhart*, holding that it is plain error to accept a guilty plea based on a pre-*Rehaif* understanding of the elements of a § 922(g)(1) offense.  *Lockhart*, 947 F.3d at 196.  These cases now represent the settled law by which this Court must measure whether the error is "plain" at the time of Gary's appeal.  *Ramirez-Castillo*, 748 F.3d at 215.  In light of the Supreme Court's decision in *Rehaif*, and this Court's determination in *Lockhart*, we conclude the error in this case is plain.

### B.

Having established that the first two prongs have been met, we must consider whether Gary has established the third prong of an *Olano* inquiry—that the error affected his substantial rights.  *See Olano*, 507 U.S. at 732.

### 1.

The government argues that although the court's failure to inform Gary of the additional element of the offense was error, it did not affect his substantial rights because there is overwhelming evidence in the record that he was aware he had been convicted of

9

a crime punishable by imprisonment for a term exceeding one year at the time he possessed the firearms, including a felony burglary conviction for which he served 691 days in custody. Thus, according to the government, Gary has not demonstrated a reasonable probability that, but for the error, he would not have pled guilty.

In response, Gary argues that his guilty plea is "constitutionally invalid" because the court misinformed him regarding the elements of his offense. Relying on Supreme Court precedent, he contends that a constitutionally invalid plea affects substantial rights as a *per se* matter and supports the conclusion that a defendant need not make a case-specific showing of prejudice even in the face of overwhelming evidence that he would have pled guilty.

Further, Gary asserts that the district court's error in accepting his unintelligent guilty plea is structural because it infringed upon his autonomy interest in "mak[ing] his own choices about the proper way to protect his own liberty." *Weaver v. Massachusetts*, 137 S. Ct. 1899, 1907–08 (2017). He contends this violation is comparable to the infringement that occurs when a defendant is denied the right to self-representation or the right to the counsel of his choice—and therefore affects his substantial rights regardless of the strength of the prosecution's evidence or whether the error affected the ultimate outcome of the proceedings.

We find Gary's argument persuasive. "In most cases," the phrase "affects substantial rights" means that "the error must have been prejudicial"—that is, "[i]t must have affected the outcome of the district court proceedings." *Ramirez-Castillo*, 748 F.3d at 215 (*citing Olano*, 507 U.S. at 734). Stated differently, to establish that a Rule 11 error

has affected substantial rights, a defendant must "show a reasonable probability that, but for the error, he would not have entered the plea . . . [and] satisfy the judgment of the reviewing court, informed by the entire record, that the probability of a different result is 'sufficient to undermine the confidence in the outcome' of the proceeding." *United States v. Dominguez Benitez*, 542 U.S. 74, 83 (2004) (citing *Strickland v. Washington*, 466 U.S. 668, 694 (1984)).

But the Supreme Court has recognized that a conviction based on a constitutionally invalid guilty plea cannot be saved "even by overwhelming evidence that the defendant would have pleaded guilty regardless." *Dominguez Benitez*, 542 U.S. 74, 84 n.10. For example, in *Bousley v. United States*, 523 U.S. 614 (1998), the Supreme Court held that a guilty plea is constitutionally valid only to the extent it is "voluntary" and "intelligent." *Id.* at 618. A plea does not qualify as intelligent unless a criminal defendant first receives "real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process." *Id.* (citing *Smith v. O'Grady*, 312 U.S. 329, 334 (1941)). Similarly, in *Henderson v. Morgan*, 426 U.S. 637, 645 (1976), the Supreme Court invalidated a guilty plea to second degree murder where the defendant was not informed of the *mens rea* requirement. Such a plea, the Court held, could not support a judgment of guilt unless it was "voluntary in a constitutional sense," and the plea could not be voluntary, i.e. an intelligent admission that he committed the offense, unless the defendant received "real notice of the true nature of the charge against him." *Id.* at 645–46. The Court assumed the prosecutor had overwhelming evidence of the defendant's guilt, but found that nothing in the record, not even the defendant's admission that he killed the victim, could

11

substitute for a finding or voluntary admission that he had the requisite intent. *Id.* at 646; *see also United States v. Mastrapa*, 509 F.3d 652, 660 (4th Cir. 2007) (defendant's misunderstanding of what was necessary to find him guilty of the offense "resulted in a flawed guilty plea that affected [his] substantial rights.").

Gary's argument is supported by the Supreme Court's long-held view that there is "a special category of forfeited errors that can be corrected regardless of their effect on the outcome," and that "not in every case" does a defendant have to "make a specific showing of prejudice to satisfy the 'affecting substantial rights' prong . . . ." *Olano*, 507 U.S. at 735. This Court has recognized that this language refers to "structural errors." *United States v. David*, 83 F.3d 638, 647 (4th Cir.1996); *see also United States v. Marcus*, 560 U.S. 258, 263 (2010) (certain "structural errors" might affect substantial rights regardless of their actual impact on an appellant's trial); *United States v. White*, 405 F.3d 208, 221 (4th Cir. 2005) (*Olano* recognizes a "special category of unpreserved errors . . . that may be noticed 'regardless of their effect on the outcome'"). Such errors are referred to as "structural" because they are "fundamental flaws" that "undermine[] the structural integrity of [a] criminal tribunal." *See Vasquez v. Hillery*, 474 U.S. at 263–64.

"The purpose of the structural error doctrine is to ensure insistence on certain basic, constitutional guarantees that should define the framework of any criminal trial. Thus, the defining feature of a structural error is that it 'affect[s] the framework within which the trial proceeds,' rather than being 'simply an error in the trial process itself.'" *Weaver*, 137 S. Ct. at 1907–08 (citing *Arizona v. Fulminante*, 499 U.S. 279, 310 (1991)). Structural errors are "defects in the constitution of the trial mechanism which defy analysis by

12

'harmless-error' standards," *Fulminante*, 499 U.S. at 309, and "deprive defendants of 'basic protections' without which 'a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence . . . and no criminal punishment may be regarded as fundamentally fair.'" *Neder v. United States*, 527 U.S. 1, 8–9 (1999) (quoting *Rose v. Clark*, 478 U.S. 570, 577–78 (1986)).

The Supreme Court has identified a "limited class" of errors as structural. *Johnson v. United States*, 520 U.S. 461, 468–69 (1997). *See, e.g.*, *McCoy v. Louisiana*, 138 S. Ct. 1500 (2018) (attorney admission of defendant's guilt over defendant's objection); *Sullivan v. Louisiana*, 508 U.S. 275 (1993) (erroneous reasonable-doubt instruction); *Vasquez*, 474 U.S. at 254 (racial discrimination in selection of grand jury); *Waller v. Georgia*, 467 U.S. 39 (1984) (violation of the right to a public trial); *McKaskle v. Wiggins*, 465 U.S. 168 (1984) (right to self-representation at trial); *Gideon v. Wainwright*, 372 U.S. 335 (1963) (total deprivation of counsel); *Tumey v. Ohio*, 273 U.S. 510 (1927) (lack of an impartial trial judge). "The precise reason why a particular error is not amenable to [harmless error] analysis—and thus the precise reason why the Court has deemed it structural—varies in a significant way from error to error," *Weaver*, 137 S. Ct. at 1907–08, but the Supreme Court has adopted at least three broad rationales for identifying errors as structural.

First, an error has been deemed structural in instances where "'the right at issue is not designed to protect the defendant from erroneous conviction but instead protects some other interest,' such as 'the fundamental legal principle that a defendant must be allowed to make his own choices about the proper way to protect his own liberty.'" *McCoy*, 138 S. Ct. at 1511 (quoting *Weaver*, 137 S. Ct. at 1908). Deprivations of the Sixth Amendment

13

right to self-representation are structural errors not subject to harmless error review because "[t]he right is either respected or denied; its deprivation cannot be harmless." *McCoy*, 138 S. Ct. at 1511 (quoting *McKaskle*, 465 U.S. at 177 n.8).

Second, an error has been deemed structural if the effects of the error are simply too hard to measure; i.e. where "the precise 'effect of the violation cannot be ascertained.'" *United States v. Gonzalez-Lopez*, 548 U.S. 140, 149 n.4 (quoting *Vasquez*, 474 U.S. at 263). Such is the case where the consequences of a constitutional deprivation "are necessarily unquantifiable and indeterminate," *Gonzalez-Lopez*, 548 U.S. at 150. For example, when a defendant is denied the right to select his or her own attorney, the government will, as a result, find it almost impossible to show that the error was "harmless beyond a reasonable doubt." *Weaver*, 137 S. Ct. at 1908 (citing *Chapman v. California*, 386 U.S. 18, 24 (1967)).

"Third, an error has been deemed structural if the error always results in fundamental unfairness," such as in the denial of the right to an attorney in *Gideon*, 372 U.S. at 343–45, or in the failure to give a reasonable doubt instruction as in *Sullivan*, 508 U.S. at 279. In these circumstances, it "would therefore be futile for the government to try to show harmlessness." *Weaver*, 137 S. Ct. at 1908.

These three categories are not rigid; more than one of these rationales may be part of the explanation for why an error is deemed structural. *Weaver*, 137 S. Ct. at 1908. Thus, an error can count as structural even if the error does not lead to fundamental unfairness in every case. *Id.*, s*ee Gonzalez-Lopez*, 548 U.S. at 149, n.4 (rejecting the idea that structural errors "always or necessarily render a trial fundamentally unfair and unreliable").

14

2.

The Supreme Court has expressly reserved the question of whether structural errors automatically satisfy the third prong of *Olano*, s*ee Puckett v. United States*, 556 U.S. 129, 140–41 (2009), but this Court has held that such errors necessarily affect substantial rights, satisfying *Olano*'s third prong.[7] *See David*, 83 F.3d at 647 (failure to instruct jury on an element of the offense is within the "special category" of forfeited errors). Therefore, if an error is determined to be structural, the third prong of *Olano* is satisfied. *Ramirez-Castillo*, 748 F.3d at 215. Against this backdrop, we must determine whether the constitutional error in this case is a structural error that satisfies the third prong of an *Olano* inquiry.

Under each of the Supreme Court's rationales, we find the district court's error is structural. First, the error violated Gary's right to make a fundamental choice regarding his own defense in violation of his Sixth Amendment autonomy interest. Indeed, the Sixth Amendment contemplates that "the accused . . . is the master of his own defense," and thus certain decisions, including whether to waive the right to a jury trial and to plead guilty, are reserved for the defendant. *McCoy*, 138 S. Ct. at 1508.

Gary had the right to make an *informed* choice on whether to plead guilty or to exercise his right to go to trial. In accepting Gary's guilty plea after misinforming him of the nature of the offense with which he was charged, the court deprived him of his right to

---

[7] We acknowledge that not every Rule 11 violation resulting in a constitutional error requires the automatic reversal of a conviction. But a Rule 11 error is not harmless when it affects a defendant's substantial rights. *See Fulminante*, 499 U.S. at 306 (citing *Chapman*, 386 U.S. at 21–22); *see* Fed. R. Crim P. 11(h). Indeed, structural errors affect the "entire conduct of the trial from beginning to end," and therefore cannot be harmless. *Fulminante*, 499 U.S. at 309.

determine the best way to protect his liberty. Gary need not demonstrate prejudice resulting from the error because harm to a defendant is irrelevant to the principles underlying his autonomy right and liberty interests. *McKaskle*, 465 U.S. at 177 n. 8. Thus, the error is structural regardless of the strength of the prosecution's evidence or whether the error would have affected the ultimate outcome of the proceedings. *Id.*

Further, we find that the district court's error is structural because the deprivation of Gary's autonomy interest under the Fifth Amendment due process clause has consequences that "are necessarily unquantifiable and indeterminate," *see Gonzalez-Lopez*, 548 U.S. at 150, rendering the impact of the district court's error simply too difficult to measure. *See id.* at 149 n.4 (quoting *Vasquez*, 474 U.S. at 263) (finding structural error where "the precise 'effect of the violation cannot be ascertained.'")

Here, as in *Gonzalez-Lopez*, "we rest our conclusion of structural error upon the difficulty of assessing the effect of the error." 548 U.S. at 149 n.4; *see also Waller*, 467 U.S. at 49 n.9 (error not subject to harmless error review where the benefits of the right infringed "are frequently intangible, difficult to prove, or a matter of chance."). The error here occurred in the context of a guilty plea and thus is not the type of error that "'may be quantitatively assessed in the context of other evidence presented [at trial] in order to determine whether [the error was] harmless beyond a reasonable doubt.'" *Gonzalez-Lopez*, 548 U.S. at 148 (citing *Fulminante*, 499 U.S. at 307–08). And unlike Rule 11 errors amounting to "small errors or defects that have little if any, likelihood of having changed the result of the [proceeding]," *see Chapman*, 386 U.S. at 22, the impact of this error—an undisputed constitutional violation where Gary was misinformed about the nature of the

16

charges against him—is instead the type that is fundamental to the judicial process. When Gary pled guilty, he waived, among other rights, his right to a trial by jury, his privilege against self-incrimination, and his right to confront his accusers. The impact of his unknowing waiver of his trial rights based on an unconstitutional guilty plea, just like the denial of other trial rights previously identified by the Supreme Court as structural error, is unquantifiable. It is impossible to know how Gary's counsel, but for the error, would have advised him, what evidence may have been presented in his defense, and ultimately what choice Gary would have made regarding whether to plead guilty or go to trial. With no way to gauge the intangible impact that results from a guilty plea premised on a constitutional violation, s*ee Waller*, 467 U.S. at 49 n.9, we "find it almost impossible to show that the error was 'harmless beyond a reasonable doubt.'" *Weaver*, 137 S. Ct. at 1908 (citing *Chapman*, 386 U.S. at 24).

Finally, we independently find the error is structural on the ground that fundamental unfairness results when a defendant is convicted of a crime based on a constitutionally invalid guilty plea. Gary waived his trial rights after he was misinformed regarding the nature of a § 922 offense and the elements the government needed to prove to find him guilty. Indeed, under the provisions of § 922(g), "the defendant's status is the 'crucial element' separating innocent from wrongful conduct." *Rehaif*, 139 S. Ct. at 2197 (citing *United States v. X-Citement Video, Inc.*, 513 U.S. 64, 73 (1994). Yet the district court failed to inform Gary that knowledge of his prohibited status was an element of the offense, denying him any opportunity to decide whether he could or desired to mount a defense to this element of his § 922(g)(1) charges—as it was his sole right to do. Thus, in accepting

17

his uninformed plea, the court denied Gary's right to make a knowing and intelligent decision regarding his own defense.

Regardless of evidence in the record that would tend to prove that Gary knew of his status as a convicted felon, it is in the interest of justice that Gary knowingly and intelligently "engag[e] in the calculus necessary to enter a plea on which this Court can rely in confidence." *Lockhart*, 947 F.3d at 197. Any conviction resulting from a constitutionally invalid plea "cannot reliably serve its function as a vehicle for determination of guilt or innocence, . . . and no criminal punishment [based on such a plea] may be regarded as fundamentally fair." *See Neder*, 527 U.S. at 8–9 (quoting *Rose*, 478 U.S. at 577–78).

Accordingly, we conclude that the district court's constitutional error is structural and affects Gary's substantial rights, satisfying the third prong of the *Olano* inquiry.

C.

Finally, having found that Gary has satisfied the three prongs under *Olano*, this Court must determine whether it should exercise its discretion to correct the error. 507 U.S. at 732. The fact that the district court's error affected Gary's substantial rights does not alone warrant the exercise of our discretion. We are "not obligated to notice even structural error on plain error review." *Id.* at 737. We exercise our discretion on plain error review only when "the error seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *Id.* at 736. "Central to this inquiry is a determination of whether, based on the record in its entirety, the proceedings against the accused resulted

18

in a fair and reliable determination of guilt." *Ramirez-Castillo*, 748 F.3d at 217 (citing *United States v. Cedelle*, 89 F.3d 181, 186 (4th Cir. 1996)).

The Fifth Amendment guarantees a criminal defendant due process in the course of criminal proceedings that could deprive him of life, liberty, or property. U.S. Const., amend. V. Although trial by jury is guaranteed specifically by the Sixth Amendment, the right is often waived through the court's acceptance of a guilty plea. A guilty plea is by far the most common criminal proceeding, rendering it "indispensable in the operation of the modern criminal justice system." *See Dominguez Benitez*, 542 U.S. at 75. Indeed, the vast majority of federal criminal cases are resolved through guilty pleas. In fiscal year 2018, nearly 90% of federal criminal defendants nationwide pled guilty. Judicial Business—September 2018, Table D-4, available at https://www.uscourts.gov/statistics/table/d-4/judicial-business/2018/09/30 (last viewed Mar. 9, 2020) (saved as ECF opinion attachment). Within the Fourth Circuit the percentage is even greater—96.4 percent. *See* U.S. Sentencing Commission, *"Statistical Information Packet, Fiscal Year 2018, Fourth Circuit," Table 2*, available at https://www.ussc.gov/research/data-reports/geography/2018-federal-sentencing-statistics (last viewed Mar. 9, 2020) (saved as ECF opinion attachment).

Accordingly, the integrity of our judicial process demands that each defendant who pleads guilty receive the process to which he is due. It is the duty of the court to ensure that each defendant who chooses to plead guilty enters a knowing and voluntary plea.

The impact of a guilty plea upon a defendant's fundamental rights cannot be overstated. An individual's choice to plead guilty is his alone to make—after he has been

19

fully informed by the nature of the charges against him and the consequences of his plea. The waiver of Fifth and Sixth Amendment trial rights based on a constitutionally invalid plea undermines the credibility and public reputation of judicial proceedings and fails to foster confidence that they will result in a "fair and reliable determination of guilt" rather than a conviction obtained contrary to constitutional principles. Even where evidence in the record might tend to prove a defendant's guilt, his right to due process when pleading guilty must remain paramount. *See Cedelle*, 89 F.3d at 186 n.4 (recognizing that "circumstances may exist where the proceedings contain an error that seriously affects the fairness, integrity, or public reputation of the judiciary even though the record demonstrates that the defendant is guilty").

We recognize that there is an importance in respecting the finality of guilty pleas and the laudable purpose they serve as part of our criminal justice system. Indeed, our system encourages guilty pleas; they benefit both defendants, for whom they may result in lesser penalties and the dismissal of additional charges, and the government, which favors judicial economy. Accordingly, we must proceed with caution when permitting their vacatur. But the structural integrity of the judicial process is not only at stake but undermined when we permit convictions based on constitutionally invalid guilty pleas to stand. There should be no instance where such a plea is accepted for the sake of obtaining a conviction, particularly where a defendant who did not receive notice of the true nature of an offense might unknowingly forgo the opportunity to raise an available defense.

As *Olano* makes clear, a reviewing court should exercise its discretion to grant plain error review "in those circumstances in which a miscarriage of justice would otherwise

result." 507 U.S. at 736. But justice is not *only* a result. In criminal proceedings where life and liberty are at stake, it is certainly our *intent* that "justice" be achieved in the result, but it is our *mandate* that "justice" be achieved in the process afforded the accused. To allow a district court to accept a guilty plea from a defendant who has not been given notice of an element of the offense in violation of his Fifth Amendment due process rights "would surely cast doubt upon the integrity of our judicial process . . . ." *See Mastrapa*, 509 F.3d at 661. We cannot envision a circumstance where, faced with such constitutional infirmity and deprivation of rights as presented in this case, we would not exercise our discretion to recognize the error and grant relief.

We therefore hold that the district court's erroneous acceptance of a constitutionally invalid guilty plea "seriously affects the fairness, integrity or public reputation of judicial proceedings." *Olano*, 507 U.S. at 732. Accordingly, we exercise our discretion to notice the error and vacate Gary's guilty plea and convictions.

## IV.

For these reasons, we vacate Gary's plea and convictions, and remand the case to the district court for further proceedings.

*VACATED AND REMANDED*